34641. PENNSYLVANIA THRESHERMEN & FARMERS MUTUAL CASUALTY INSURANCE CO. *et al. v.* GILLIAM.

DECIDED JUNE 19, 1953.

*Marshall, Greene, Baird & Neely, Burt DeRieux,* for plaintiffs in error.

*Currie & McGhee,* contra.

SUTTON, C. J.  The evidence showed that the claimant was employed as a pharmacist at McCleskey & Chandler's drug store in Atlanta, Georgia.  His regular weekly wage was more than $48.  Shortly after 9 p.m. on August 22, 1951, while filling a prescription, the claimant suffered a seizure and became unconscious.  He was taken to Grady Hospital, and his wife transferred him to Crawford Long Hospital, where he remained for two weeks.  While convalescing at home, he was nursed by his wife for four or five months; his mind deteriorated steadily, and he was committed to the Milledgeville State Hospital on December 5, 1951.

The plaintiffs in error contend that there is no competent evidence in the record to show the nature of the seizure suffered by the claimant, his prior physical condition, or any particular exertion which could have aggravated a preexisting condition. The claimant's wife testified that the claimant had been "doubling up" on his working time prior to the date of his seizure. T. M. McCleskey, Sr., testified that the claimant ordinarily worked on shifts with John Dobson.  Dobson testified that he went on his vacation on August 14, 1951, and that the claimant worked for him then; that the hours of the store were from 8:30 a.m. until 10 p.m.  Troy E. Seagraves testified that he was working in the store on August 22, 1951, and that the claimant worked more hours while Dobson was on vacation than he had previously.

It was shown that the work of the claimant involved some physical exertion.  In filling prescriptions, the claimant had to lift large bottles, full or partly full, from a five-foot shelf in one room, carry them to the work table, and then put them back on the shelf.  There was a four-foot stepladder which the claimant used to reach articles on high shelves.

John Gilliam, the claimant's son, testified that he had come to the drug store where his father worked to visit with him at

about 9 p.m. on August 22, 1951. The claimant was busy filling prescriptions, and climbed the stepladder twice in a period of fifteen or twenty minutes. The claimant seemed to be tired, perspiring and dizzy; he drank some water, keeled over and passed out, unconscious. Seagraves also testified that the claimant had been filling a prescription, and that his son, John Gilliam, had been in the store about ten minutes when he came running to the front to get water. Seagraves went back to do what he could for the claimant, but the claimant became unconscious and seemed to faint.

Dr. Roy H. McClung was called as an expert medical witness in behalf of the claimant. Upon being asked his opinion as to what occurred to a pharmacist, 64 years of age and with no previously-known physical defects, who, while compiling a prescription involving the climbing of a four or five-foot ladder to get medicines in containers weighing four or five pounds, suddenly complained of faintness and dizziness, became unconscious and remained so for three days, and, upon returning to consciousness, never returned to his normal mental condition existing before the occurrence, Dr. McClung replied: "Well, the man had what we call a cerebral accident, and that covers a lot of territory. . . I think the man had had a cerebral hemorrhage or stroke." Asked whether or not physical exertion in climbing a ladder and in lifting four or five-pound containers could have induced or caused such a brain hemorrhage in a man 64 years of age working as a pharmacist, the witness replied: "I think in one who has a cerebral hemorrhage it can be precipitated by any exercise or emotional upset; there are many things which would increase the blood pressure." He further testified that physical exertion always does, or should, increase the blood pressure; that, if a man 64 years of age has a brain hemorrhage sufficient to cause unconsciousness and then loses his mental ability, such loss of mental ability is directly the result of the brain hemorrhage, and could never be recovered.

"The diagnosis and treatment of injury and disease are essentially medical questions to be established by physicians as expert witnesses and not by laymen. *Mayo* v. *McClung*, 83 *Ga. App.* 548 (64 S. E. 2d 330)." *Autry* v. *General Motors BOP Assembly Plant*, 85 *Ga. App.* 500, 502 (69 S. E. 2d 697). The

diagnosis by the medical expert in this case was that the claimant had suffered a cerebral hemorrhage or stroke, which resulted directly in the subsequent permanent loss of the claimant's mental faculties. It is this evidence which renders the case of *Shelby Mutual Casualty Co.* v. *Huff*, 87 *Ga. App.* 463 (74 S. E. 2d 251), cited by the plaintiffs in error, inapplicable here, for in that case there was no evidence of either the cause of the employee's death or of a diseased condition which might have been affected by exertion. Here, there was evidence that the claimant's disability was caused by a cerebral hemorrhage, and, in addition to the testimony of Dr. McClung that physical exertion could have precipitated the stroke, there is an inference that exertion contributes to a cerebral hemorrhage, as was held in *Hartford Accident &c. Co.* v. *Waters*, 87 *Ga. App.* 117 (73 S. E. 2d 70). It is immaterial that the physical exertion of the claimant is not unusual or excessive. *Bussey* v. *Globe Indemnity Co.*, 81 *Ga. App.* 401, 404 (59 S. E. 2d 34); *Lumbermen's Mutual Casualty Co.* v. *Griggs*, 190 *Ga.* 277 (9 S. E. 2d 84).

While there is a statement in the finding of facts by the deputy director that "the exertion aggravated a pre-existing condition," and even if this was erroneously found, still, this does not render the finding as to the ultimate fact harmful error, such finding being that "The accident and injury was the result of overexertion in his [the claimant's] work as a pharmacist in which he was required to work long hours, [and] to climb up a stepladder frequently for the purpose of getting the drugs used to fill prescriptions," and that "on August 22, 1951, while so employed he sustained an accidental injury which arose out of and in the course of his employment resulting in his total disability." Where, as here, there is evidence to sustain the ultimate finding of fact, the finding of the board should be affirmed. *Peninsular Life Ins. Co.* v. *Brand*, 57 *Ga. App.* 526, 527 (196 S. E. 264); *American Mutual Liability Ins. Co.* v. *Sisson*, 198 *Ga.* 623, 625 (32 S. E. 2d 295).

There was evidence that the claimant was working longer hours than usual while his coemployee was on vacation, and that his work involved some physical exertion which contributed as the cause of a cerebral hemorrhage; and that the claimant, as the result of his stroke, lost his mental powers and became

permanently disabled. This evidence authorized the award of compensation, and the superior court did not err in denying the appeal from the award by the board.

*Judgment affirmed. Felton and Worrill, JJ., concur.*