## 52627. BROWN v. THE STATE.

MARSHALL, Judge.

Appellant was indicted for the offense of murder with malice and convicted by jury of voluntary manslaughter. He was sentenced to serve 15 years. He brings this appeal from that conviction and sentence, enumerating 23 errors. *Held:*

1. Enumerations 1-3 are based upon the general grounds. After a thorough review and analysis of the evidence presented, we are satisfied that the evidence presented was sufficient to justify a jury in finding the appellant guilty of the offense of voluntary manslaughter. These enumerations are without merit.

2. In Enumeration 4, appellant alleges that he was denied effective assistance of counsel and due process of law when the trial court denied a motion for continuance. Appellant retained his present counsel on a Wednesday, arraignment was on the following Friday and the trial commenced on the next Monday, September 22, 1975. However, appellant was also represented at trial by other counsel who had been actively involved in appellant's defense since June, 1975.

All applications for continuance are addressed to the sound discretion of the court and shall be granted or refused as the ends of justice may require. There is no fixed rule as to the number of days that should, of right, be allowed counsel in a criminal case to prepare the case for trial, but the trial judge, in the exercise of his discretion to grant or refuse a continuance, has to consider the facts and circumstances of each case to determine what the ends of justice require. A statement by counsel for the defendant that he has not had sufficient time to investigate and prepare the defense is a mere conclusion. Questions of this nature must of necessity be entrusted to the discretion of the trial judge. *Smith v. State,* 198 Ga. 849, 852 (33 SE2d 338); *Foster v. State,* 213 Ga. 601 (110 SE2d 426). An examination of this record discloses that the trial court did not abuse its discretion in refusing the requested continuance.

3. Enumerations 5-7 assert error in the excusing of three jurors on the sole ground that they were conscientiously opposed to capital punishment in a case in which capital punishment, under the facts, would not have been an authorized punishment. Regardless of the assertion by appellant that there were no aggravating facts adduced by the state that would have authorized the imposition of the death penalty, the fact remains that at the time of the voir dire examination, appellant was charged with a capital offense. The state never stated that it was not seeking the death penalty. Under these circumstances we conclude that it was not improper for the state's attorney to inquire into the predisposition of the prospective jurors in regard to this aspect of the case. Moreover, since appellant was not sentenced to death, he has no standing to object to the striking of jurors opposed

to the death penalty. *Walker v. State,* 225 Ga. 734 (1) (171 SE2d 290); *Fountain v. State,* 228 Ga. 306 (2) (185 SE2d 62); *Pless v. State,* 231 Ga. 228, 229 (2) (200 SE2d 897).

4. Enumerations 8 and 16 assert the trial court erred in allowing the introduction of evidence that tended to place appellant's character in issue where appellant had not introduced that issue. Each of these occurrences involves questions of the marital status and relationship existing between appellant and his deceased wife.

Our examination of the evidence of which complaint is made convinces us that the evidence was relevant and admissible. The witness whose testimony is in issue simply stated that he believed the status of husband and wife existed between the appellant and his wife but the witness was not personally aware of a wedding ceremony. The second reference concerned visits the witness had made because of "fusses" between the Browns. Such testimony is innocuous at worst and did not tend to place the appellant's character into issue. Even if the references had had such a tendency, prejudice to appellant would not have resulted. Where evidence is admissible as showing motive or to connect the accused with the crime charged, the mere fact that it may tend incidentally to put the character of the accused in issue does not render it inadmissible. *Anderson v. State,* 206 Ga. 527 (1) (57 SE2d 563); *Whippler v. State,* 218 Ga. 198, 200 (126 SE2d 744). These enumerations are without merit.

5. Enumerations numbered 9 and 10 contend that the court erred in allowing a state's witness to testify as an expert and give opinion testimony without proper qualification. The witness was the sheriff of the county and testified that he had investigated many homicides. He had attended training schools and had certain qualifications in wound identification. The evidence in question concerned testimony as to entrance and exit wounds, the probable position of the victim when she was shot and whether she could have been holding the death weapon. In each instance, the witness gave the basis of his opinion.

An expert is one who by habits of life and business has a peculiar skill in forming an opinion on the subject in dispute. *Sims v. State,* 40 Ga. App. 10, 13 (148 SE 769).

Whether or not a witness is allowed to testify as an expert is a question for the sound discretion of the trial court and such discretion, unless abused, will not be disturbed. *Rouse v. Fussell,* 106 Ga. App. 259 (4) (126 SE2d 830). Generally nothing more is required to entitle one to give testimony as an expert than that he has been educated in the particular trade or profession; and special knowledge in regard to a particular subject may be derived from experience as well as study and direct mental application. *Carter v. Marble Products,* 179 Ga. 122 (1) (175 SE 480); *Frazier v. State,* 138 Ga. App. 640, 645 (227 SE2d 284). We find no error in the admission of the opinion testimony by the sheriff.

6. Enumerations 11-15 deal with confessions. The principal contentions are that interrogation continued after appellant requested the assistance of counsel; that appellant did not understand his Miranda rights; and that one statement was taken without the benefit of a Miranda warning.

The evidence giving rise to this issue may at best be described as confusing. Reconciling the testimony of the interrogating officer as fully as possible, it reasonably appears that the sheriff received a call from appellant indicating that Mrs. Brown had shot herself and apparently was dead. Upon arriving at the scene of the shooting the sheriff observed the deceased prostrate on the ground, apparently dead, with a revolver clutched in her right hand. He was handed by another officer at the scene what appeared to be an authentic suicide note. Without the benefit of a Miranda warning, the sheriff asked the appellant what had happened since appellant was an eyewitness to the incident. Appellant related what apparently was a suicide. At this time appellant was detained but not arrested. Appellant was taken to the police station pending the outcome of an autopsy, but still not in a status of arrest. Because of the nature of the wounds and the results of the autopsy, appellant came under suspicion. At that time he was fully warned of his Miranda rights. Appellant contends that at this first station house interview he was dazed and sick and did not fully comprehend his rights. The sheriff testified to the contrary. Appellant gave a statement reduced to a tape

recording which reaffirmed his contention that Mrs. Brown had committed suicide or that the death resulted from an accident as appellant was attempting to disarm his wife and prevent her from taking her own life. Though it is not clear, it appears that later that same day the sheriff suggested that appellant take a polygraph examination. This was arranged for the next morning. At some point the sheriff also requested that appellant furnish handwriting specimens for the purpose of comparing those with the alleged suicide note. It appears that at the time appellant was requested to furnish handwriting specimens he asked to see an attorney. Efforts were made to obtain an attorney but these efforts were ineffectual. Thereafter, appellant agreed to give the specimens anyway. It is not clear whether the request for handwriting specimens and the polygraph suggestion occurred at this conference or at different times. Nor is it clear whether at this point and time appellant also gave the first inculpatory statement or whether the incriminating statement was given to the sheriff on the following day and after the administering of the polygraph test. In any event the sheriff testified that prior to this third statement appellant was advised of his Miranda rights and the appellant elected to give a statement without the presence of an attorney. There is evidence of what might have been circumstances surrounding the third statement or of yet another incriminating statement at which the sheriff plainly advised appellant that since he had requested an attorney, the sheriff could not talk to him without the presence of the attorney. It is not controverted that at this time appellant requested that even if no questions could be asked, would not the sheriff simply listen to appellant's story. Lastly, the sheriff stated that the appellant had repeatedly requested interviews with the sheriff and that many conversations had occurred between the two.

Based upon the foregoing recitation of facts, we are satisfied that appellant's rights against self-incrimination were not violated. As to the first statement given at the scene of the homicide, we conclude that this was the product of an on-the-scene investigation and not a custodial interrogation of a suspect upon whom

the finger of suspicion was pointed. In the Miranda case it was held by the Supreme Court that the holding in that case was not intended to restrict police officers from seeking out evidence in the field. General on-the-scene questioning as to facts surrounding a crime or other general questioning of citizens in the fact-finding process was not affected. It is an act of responsible citizenship for individuals to give whatever information they may have to aid in law enforcement. In such situations the compelling atmosphere inherent in the process of in-custody interrogation is not necessarily present. Miranda v. Arizona, 384 U. S. 436, 477 (86 SC 1602, 16 LE2d 694).

As to the remaining statements, the evidence was in dispute as to the appellant's understanding of his Miranda rights, and as to when he exercised his constitutional right to have an attorney present and whether he knowingly and intelligently waived such right. Nevertheless, the trial court had before it evidence developed in a Jackson-Denno type hearing (Jackson v. Denno, 378 U. S. 368 (84 SC 1774, 12 LE2d 908, 1 ALR3d 1206)), that was sufficient to support the finding that the statements had been made freely and voluntarily after appellant had repeatedly been advised of all his constitutional rights as provided in Miranda, supra. *Wilson v. State,* 229 Ga. 395 (191 SE2d 783); *Street v. State,* 237 Ga. 307, 313 (227 SE2d 750).

The trial court did not err in overruling the motion to suppress or in admitting the several statements of the appellant nor in denying a motion for mistrial predicated upon the alleged reference to the last statement prior to a Jackson-Denno hearing but which subsequently was admitted properly into evidence by the trial court.

7. Enumeration 17 complains that the trial court erred when it refused to withdraw the verdict option of murder from the jury. In substance this is tantamount to a motion for a directed verdict of acquittal as to the offense of murder. In this case there was substantial evidence pointing toward the offense of murder. Only where there is no conflict in the evidence and a verdict of acquittal is demanded as a matter of law is it error for a trial court to refuse to direct a verdict of acquittal. *Merino v. State,* 230

Ga. 604 (198 SE2d 311); *Davis v. State,* 234 Ga. 730, 732 (218 SE2d 20); *Allen v. State,* 137 Ga. App. 302, 303 (223 SE2d 495). Moreover, appellant has shown no harm in view of the fact that he was acquitted of murder. *Hollis v. State,* 137 Ga. App. 298 (223 SE2d 491).

8. Enumerations 18–23 question the charges of the court dealing with reasonable doubt, accident, involuntary manslaughter, and the felony murder rule. We have carefully examined the charge of the court. In each instance, either the charge of the court fully covered the principle contended for by appellant in the appropriate language of the statute involved or the evidence did not reasonably raise an issue such as to require such an instruction. See *Leutner v. State,* 235 Ga. 77, 81 (218 SE2d 820); *Crawford v. State,* 236 Ga. 491, 493 (224 SE2d 365); *Pulliam v. State,* 236 Ga. 460, 466 (224 SE2d 8); *Nuckles v. State,* 137 Ga. App. 200, 204 (223 SE2d 245); *State v. Stonaker,* 236 Ga. 1 (222 SE2d 354).

*Judgment affirmed. McMurray and Smith, JJ., concur.*

Argued September 8, 1976 — Decided October 8, 1976 — Rehearing denied October 25, 1976 —

*J. Melvin England,* for appellant.
*John T. Perren, District Attorney,* for appellee.