## 58805. McCORMICK v. AVRET.

SMITH, Judge.

Appellant brought a medical malpractice action alleging that appellee, Dr. Edwin T. Avret, damaged the radial nerve of appellant's right wrist by failing to exercise due care in keeping sterile a needle used to draw a blood sample. Appellant asserts that the trial court erred in refusing to qualify as an expert witness a licensed nurse who "has drawn blood and given injections in numbers exceeding two thousand, and perhaps double that amount" and in granting appellee's motion for directed verdict. We reverse.

1. Appellant bases her right to recovery on the theory that appellee's failure to follow standard procedures for keeping a hypodermic needle sterile resulted in a severely infected radial nerve. Contrary to appellee's contentions, there was sufficient evidence to present a jury question on whether appellant's injury was the result of infection.

After appellee drew blood from appellant, the area from which blood was taken became swollen and tender. Appellee, a medical doctor, testified that he could not pinpoint the cause of the inflammation. However, appellee admitted that infection was one of several possible causes. Appellant testified that the hypodermic needle used to draw blood was laid next to a recently used tongue depressor. Appellant further testified that although several attempts were made to draw blood, the hypodermic needle was never resterilized. On the basis of his testimony, we conclude that a jury question was presented as to whether appellant's injuries were the result of an infection.

2. Appellee contends that since he is a medical doctor, only another medical doctor is qualified to provide expert testimony as to what constitutes reasonable care in keeping sterilized a needle used to draw blood from a patient. We disagree.

In a medical malpractrice case, "the proof *ordinarily* required to overcome such presumption of care, skill, and diligence is that given by physicians or surgeons as expert witnesses. *Pilgrim v.*

*Landham,* 63 Ga. App. 451 (4) (11 SE2d 420); *Howell v. Jackson,* 65 Ga. App. 422 (16 SE2d 45); 70 CJS 1006-1008, § 62; 41 AmJur 238, § 128." (Emphasis supplied.) *Shea v. Phillips,* 213 Ga. 269, 271 (98 SE2d 552) (1957). Ordinarily, only a medical doctor has the training and experience necessary to provide meaningful testimony on the question of due care in a medical malpractice case. However, as appellee admits, the drawing of blood is not a procedure performed exclusively by medical doctors.[1] The sterilization and resterilization of the hypodermic needle used to draw blood is a basic part of that procedure.

It should be emphasized that the excluded testimony relates only to the proper procedure for keeping a hypodermic needle sterile. The testimony was not offered to establish a standard of care in the actual drawing of blood. Nor was it offered to establish a standard of care with respect to the diagnosis or treatment of an illness or injury.

The witness offered by appellant, a licensed nurse with training and experience in drawing blood, clearly qualifies as an expert in keeping a hypodermic needle sterile. She is no less an expert merely because the defendant in a particular case happens to be a medical doctor. We therefore conclude that the trial court abused its discretion in not permitting appellant's witness to testify as to the standard of reasonable care in keeping sterile a hypodermic needle used to draw blood from a patient. See *Brown v. State,* 140 Ga. App. 160, 162-163 (230 SE2d 128) (1976).

*Judgment reversed. McMurray, P. J. and Banke, J., concur. Deen, C. J., and Shulman, J., concur specially. Quillian, P. J., Birdsong and Sognier, JJ., concur in part and dissent in part. Carley, J., disqualified.*

Submitted November 19, 1979 — Decided March 10, 1980 — Rehearing denied March 31, 1980 — 

*Paul S. Weiner, P. J. Weiner,* for appellant.
*Robert G. Tanner,* for appellee.

Shulman, Judge, concurring specially.

I agree with the majority that, *under the facts of this case,* plaintiff's witness, a licensed nurse, should have been permitted to

---

[1]Appellee testified that a nurse is normally responsible for drawing blood from his patients.

testify as an expert witness for purposes of establishing the requisite standard of care for sterilizing hypodermic needles. Since in this particular instance the witness properly established her expertise in regard to the care of and procedure for keeping hypodermic needles and inasmuch as this procedure does not require the special expertise and training of a physician, but is a procedure for which a licensed nurse is eminently qualified, the trial court erred in not permitting the witness to testify as an expert.

I do not wish to imply by this special concurrence, however, that in *all* instances where a paraprofessional and a professional perform the same function, e.g., withdrawing blood by use of a hypodermic needle, the paraprofessional can testify as an expert to the standard of care for the performance of that entire function. But, as to those elements of the performance of such functions for which the training of the professional is not required, a paraprofessional should be able to testify to the requisite standard of care for that particular phase of the function, but only in such extremely limited circumstances.

Where, as here, the physician's medical degree did not render him any more qualified or competent *to prepare the hypodermic needle* (as opposed to the actual withdrawal of blood) than a licensed nurse, the majority properly concluded that plaintiff's witness should have been afforded expert witness status to testify as to the degree of care necessary for proper use and handling of hypodermic needles.

I am authorized to state that Chief Judge Deen joins in this special concurrence.

BIRDSONG, Judge, concurring in part and dissenting in part.

Notwithstanding the assertions of the authors of the principal and concurring opinions that the questioned expert testimony went only to show correct sterile procedures involved in withdrawing blood from the blood system, the transcript clearly shows that the proffered testimony related to a "standard of care" and not a procedure. A procedure is a technical matter subject to elucidation by one professing expertise in the procedure. A "standard of care" in the medical field is a matter, I believe, to be exclusively within the realm of medical practice. In spite of the attempt by Mrs. McCormick to limit the evidence to the proper manner of sterilization, the trial court excluded the testimony only because it did not qualify as expert "medical doctor" testimony and because only testimony from such a witness would qualify under the applicable statute (Code Ann. § 84-924) to show a medical

procedure generally accepted in the medical profession. I cannot agree with what amounts to a relaxation of the requirement in medical malpractice cases that medical testimony alone will suffice to furnish the necessary standard for a jury to determine what are acceptable medical procedures in a particular treatment. It long has been the rule in this state that expert "professional" testimony is required to establish what is the accepted standard of practice in a particular area of the medical profession generally. "Jurors and courts do not know and are not permitted arbitrarily to say what are the proper methods of treating an ailment. This is a medical question. Hence, the general rule is that medical testimony must be introduced to inform the jurors what is a proper method of treating the particular case. 'The court and the jury must have a *standard* measure which they are to use in measuring the acts of the doctor in determining whether he exercised a reasonable degree of care and skill. They are not permitted to set up and use any arbitrary or artificial standard of measurement that a jury may wish to apply.' *Pilgrim v. Landham,* 63 Ga. App. 451 (4) (11 SE2d 420)." *Howell v. Jackson,* 65 Ga. App. 422, 423 (16 SE2d 45). "And in such a case the proof ordinarily required to overcome such presumption of care, skill, and diligence is that given by physicians or surgeons as expert witnesses. *Pilgrim v. Landham . . . Howell v. Jackson . . .* 70 CJS 1006-1008, § 62, 41 AmJur 238, § 128." *Shea v. Phillips,* 213 Ga. 269, 271 (98 SE2d 552). See also *Hill v. Hospital Auth.,* 137 Ga. App. 633, 640 (224 SE2d 739); *Washington v. City of Columbus,* 136 Ga. App. 682 (7) (222 SE2d 583); and *Kenney v. Piedmont Hospital,* 136 Ga. App. 660, 664 (222 SE2d 162).

In this case a nurse made two attempts to withdraw blood while in the appellee doctor's office. She attempted to withdraw the blood from the left and right arm of the appellant in the region of her elbow. Being unsuccessful, the nurse sought the aid of the doctor. Appellee then successfully withdrew blood from the wrist area. Irritation occurred and subsequently an infection resulted. This infection apparently damaged the radial nerve. The doctor testified that it was standard practice, accepted in the medical profession generally, to use the same hypodermic needle more than once in an effort to withdraw blood on the same patient where the first effort was unsuccessful, provided the new area of the patient's body was rendered sterile and the needle also was cleaned with alcohol or other similar disinfectant prior to its second use. Appellant initially sought to qualify a nurse as an expert for the purpose of showing that it was *not* accepted medical practice in the profession generally to authorize a second use of the same needle even if sterile procedures were followed. There is no question that the nurse in

question was highly trained in the procedure of withdrawing blood and had received extensive education and training in that specialty. The only question is whether her testimony will satisfy the need for "medical" testimony to show the standards of procedure established and accepted generally in the medical profession. The majority takes the position that the nurse in question is an "expert" (I agree) and that it is within the sound discretion of the trial court to qualify and permit a person to testify as an expert. *Brown v. State,* 140 Ga. App. 160, 162-163 (230 SE2d 128). This begs the question in my opinion. While appellant might have offered the nurse's testimony to illustrate a procedure and to show how she had withdrawn blood in the past, what she understood to be the accepted practice at the various places she had worked, or even what she understood to be the practice taught in nursing school, we conceive such evidence irrelevant to establish a standard because it shows nothing more than the practice she understood or followed. Pretermitting that nurses normally are best qualified by experience and training to withdraw blood and that medical doctors rarely perform that rather mechanical procedure, this does not qualify a nurse as a member of the medical profession so as to make her opinion as to the proper performance of a technical procedure admissible as a "medical" opinion by a member of the medical profession. While a rose may be a rose, a nurse is not a doctor. As I understand the law, only a doctor can give a medical opinion that a particular procedure meets the standard generally accepted in the medical profession. However, the trial court recognized that appellant was not simply offering the testimony of Nurse Sterns to show the best way to take blood, or the way she was taught to take blood, but to establish, as an expert, that the second use of a hypodermic needle is not an accepted practice in the medical profession generally. A nurse is no better qualified to show a medical standard than a "practical" nurse, a paramedic, a doctor's aide, or even a hospital administrator. All of these could well qualify by reason of special training, expertise, or experience as an expert. I cannot believe that the inclusion of the word *ordinarily* in the stated "standard"of expertise required to establish accepted medical practice (*Pilgrim v. Landham,* supra) authorizes any person having expertise in a particular skill to testify as to what clearly is a medical procedure and what is under the strict control of the medical profession. It is inconceivable that anyone other than the members of the medical profession could establish the acceptable standards for the procedure of withdrawing blood from the human body. We are not here dealing with the procedures believed to be acceptable by an assisting nurse, but the

appropriateness of an act of intrusion into the human body. I do not consider it wise to establish a rule that will allow an "expert" other than a medical doctor to tell a jury what is an established medical practice. Paraphrasing *Hughes v. Malone,* 146 Ga. App. 341, 349 (247 SE2d 107): "Juries should not pass upon the [medical] niceties involved in the exercise of [medical procedures] and judgments *in the absence of a showing by competent [medical] expert opinion* that those actions or omissions were unreasonable or were not the product of a reasoned and knowledgeable exercise of [medical] training and experience."

Assuming arguendo that the trial court abused its discretion in not permitting appellant's witness to testify as to the standard of reasonable care in keeping a sterile hypodermic needle to draw blood from a patient, the grant of a directed verdict was still demanded in that the proof required as to the skill and diligence of the physician has not been met as required by *Shea v. Phillips* and *Kenney v. Piedmont Hospital,* supra. In medical as well as legal or any other professional malpractice, I advocate that we should adhere to the standards heretofore established by the courts of this state, i. e., that only a doctor can establish acceptable medical practice. Otherwise, we may well have paralegals testifying as experts against attorneys and dental assistants testifying as experts against dentists.

Accordingly, I respectfully dissent as to Division 2. I have no quarrel as to the conclusion in Division 1 wherein it is held that a question of fact was presented as to the cause of infection.

I am authorized to state that Presiding Judge Quillian and Judge Sognier join in these views.