## 77500. HYDE v. THE STATE.
(377 SE2d 187)

Deen, Presiding Judge.

Appellant Hyde was convicted on one count of child molestation and one count of aggravated child molestation, the victim of both being appellant's daughter, who was four or five years old when the offenses occurred. After his conviction Hyde moved for new trial on the general grounds and the additional grounds that the child (ten years old at the time of trial) was incompetent to testify and that the testimony of the nurse practitioner who had examined and talked with the victim was inadmissible because the witness was not a medical doctor. After denial of the motion, Hyde appealed to this court, enumerating the denial of the motion for new trial as a multi-pronged error which alleged that the evidence was insufficient to sustain the verdict, that no proper foundation had been laid for the nurse practitioner's testimony, and that the nurse practitioner's testimony was improperly admitted because she was not a medical doctor. Held:

1. Examination of the record and transcript reveals that there was more than a sufficiency of competent evidence, including but not limited to the testimony of the victim herself, to authorize the rational trier of fact to find appellant guilty as charged beyond a reasonable doubt. Jackson v. Virginia, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

As to appellant's allegations concerning the nurse practitioner's qualifications and the alleged lack of foundation for her testimony, the transcript shows that during the course of the testimony defense counsel objected on these two bases but that the court overruled both objections; that the objection that the witness' qualifications were less than those of a medical doctor was renewed and again overruled; and that the objection regarding lack of foundation was not renewed. According to the transcript, the nurse practitioner's credentials as to education, special training, and experience were elicited at the commencement of her testimony, which followed the testimony of two social workers who had testified regarding their knowledge of the victim's family situation in general and the abusive activities of her fa-

ther in particular.

McAfee's credentials to testify as to the victim's vaginal and hymenal scarring, as brought out on direct examination, are as follows. In response to a question as to her duties under the protocol for nurse practitioners working (as she had testified she did) under a physician's supervision, she testified, "I do history taking, physical examinations, order lab work . . ., order . . . x-rays or other diagnostic tests." Counsel then asked, "Are there any particular groups of patients that you specifically handle for Dr. Ward?," to which McAfee replied: "Yes, all the women's exams for annual checkups [,] . . . well-baby checkups on children . . . [, and] exams on children who have had alleged sexual abuse." In response to further questions, McAfee stated that she had examined approximately fifty alleged child abuse victims since undertaking her present work, and that she had previously "been trained at [Atlanta's] Grady Hospital in the Rape Crisis Center to evaluate adult and child victims of sexual abuse." She went on to state that, in addition to her bachelor's degree in nursing, she had earned two professional master's degrees (one in Critical Care and another which qualified her as a Nurse Practitioner); that she had had thirty hours' course work and training at Ridgeview Institute (an Atlanta psychiatric hospital); and that she had only recently completed "two days of intensive training in [the child sexual abuse] area" in a Huntsville, Ala., medical facility. After giving this testimony regarding her experience and training in the child abuse area, the nurse practitioner then went on to recount her factual findings and certain conclusions therefrom. We regard this sequence as constituting an adequate foundation for this witness' testimony, given the nature of the charges against defendant/appellant.

Moreover, the law in Georgia does not require that only medical doctors be permitted to give testimony regarding a medical issue, but allows others with certain training and experience to testify on issues within the scope of their expertise. In *Avret v. McCormick*, 246 Ga. 401 (271 SE2d 832) (1980), the Supreme Court on certiorari affirmed the ruling of this court that a licensed registered nurse is qualified to testify as an expert witness within the areas of her expertise. See *McCormick v. Avret*, 154 Ga. App. 178 (267 SE2d 759) (1980). The Supreme Court held that the excluded testimony in *McCormick* should have been admitted: " 'A witness with such skill, knowledge or experience in a field or calling as to be able to draw an inference that could not be drawn by the average layman may be qualified as an expert witness.' Agnor, Georgia Evidence, § 9-5. 'Medical experts are persons possessing technical and peculiar knowledge, and any person learned in medical or physiological matters is qualified to testify as an expert thereon, even though he is not a medical practitioner [as defined in OCGA § 43-34-20 (3)].' 32 CJS 336, Evidence, § 546 (92). 'A nurse

may or may not be qualified to state an inference . . . according to the extent of his or her training and experience.' 32 CJS 345, Evidence, § 546 (92)." In *Bethea v. Smith*, 176 Ga. App. 467 (336 SE2d 295) (1985), this court, at 470, distinguished the issue there (Is a podiatrist qualified to testify as to the standard of care in "the medical profession generally," and with special reference to orthopedic surgeons?) from that in *McCormick*, noting that in certain special areas, as in *McCormick*, there is "an overlap of medical and nursing expertise" which permits nurses with expertise in those areas to testify as expert witnesses.

Further, Agnor's Ga. Evidence (2d ed., 1986) states at § 9-5 that a person's "qualification as an expert witness rests entirely in the sound discretion of the judge . . . The decision of the judge will not usually be overturned" unless the witness actually lacks appropriate credentials or the judge has applied the wrong criteria. We find here that McAfee's qualifications were appropriate and adequate.

Appellant further alleges that the portion of the nurse practitioner's testimony which identified the father as the molester was hearsay and therefore inadmissible. OCGA § 24-3-4 permits, as an exception to the hearsay rule, testimony concerning statements made as part of the medical history when relevant to diagnosis or treatment. OCGA § 43-26-1 (3) defines "Practice of nursing as a registered professional nurse" as "the performance for compensation of any act in the observation, care, and counsel of the ill, injured, or infirm . . . which requires substantial specialized judgment and skill based on knowledge and application of the principles of physical . . . science." In recording the child's statements as part of the medical history, then (including statements relating to sexual abuse), McAfee was merely fulfilling her professional duty under OCGA § 43-26-1 and under the protocol under which she worked for supervising physicians. The same is true of the nurse's clinical findings during her examination of the child's pubic and pelvic areas; in response to direct examination McAfee replied that her findings "were consistent with the history that [the child] related to me," and that vaginal scarring of the sort she found "would occur from an object being placed in the vagina, a blunt type." This testimony was well within the scope of this nurse's expertise, given the specialized training and experience to which she had previously testified.

We find readily distinguishable such cases as *Pegg v. State*, 183 Ga. App. 668 (359 SE2d 678) (1987); *Russell v. State*, 181 Ga. App. 624 (353 SE2d 820) (1987); and *Penn. &c. Ins. Co. v. Gilliam*, 88 Ga. App. 451 (76 SE2d 834) (1953), which speak only of a *physician's* qualifications as an expert witness and make no mention of a *nurse's* qualifications. *Smith v. Hospital Auth.*, 161 Ga. App. 657 (288 SE2d 715) (1982) is also distinguishable. In that case the exclusion of testi-

mony proffered by a nurse was upheld because it was determined that the excluded testimony dealt with "decisions and treatment that were exclusively within the professional skills of medical doctors," id. at 660, unlike the observation of the scarred vaginal tissue which, in the instant case, was well within the expertise of the specially trained nurse practitioner.

In *Johnson v. State*, 149 Ga. App. 544 (254 SE2d 757) (1979), a case closely analogous on its facts to that at bar, this court held at 545: "The . . . enumeration complains of the admission over objection of the physician's testimony as to the victim's out-of-court statements . . . that intercourse with her father had taken place." The court found that the inclusion in the testimony of the identity of the perpetrator as the defendant, which was contained in the out-of-court statements, was unnecessary for medical purposes, OCGA § 24-3-4, and that admission of that part of the statement was therefore error. Nevertheless, the court went on to hold, at 545: "However, the evidence was cumulative and its admission not prejudicial to the defendant." Examination of the transcript in the instant case reveals that the nurse practitioner's testimony was cumulative of that of other witnesses, including the victim herself, and therefore harmless.

2. We remind appellant that "[a]n enumeration of error may not be enlarged by brief on appeal to cover issues not contained in the original enumeration." *Scott v. State*, 177 Ga. App. 474, 477 (339 SE2d 718) (1986); accord *Chevrolet-Pontiac-Canada Group v. Pearson*, 182 Ga. App. 796 (357 SE2d 152) (1987); *Tucker v. State*, 173 Ga. App. 742 (327 SE2d 852) (1985). We have nevertheless, out of an abundance of caution, examined the merits of the various elements enumerated as error and find them not to be such as to constitute reversible error.

*Judgment affirmed. Birdsong, C. J., McMurray, P. J., Banke, P. J., Pope and Beasley, JJ., concur. Carley, Sognier and Benham, JJ., specially concur in part and dissent in part.*

SOGNIER, Judge, concurring specially in part and dissenting in part.

I respectfully dissent from the majority's holding in Division 1 that the admission of a nurse practitioner's testimony stating her opinion the victim had been sexually abused was not error. I do not agree that the witness was qualified to testify on a matter requiring an expert medical opinion.

The nurse practitioner, Laurie McAfee, first testified regarding the medical history she took from the victim. Although evidence of statements made by a patient describing medical history is admissible under OCGA § 23-3-4 insofar as such statements were "reasonably pertinent to diagnosis or treatment," medical diagnosis is the exclu-

sive province of physicians, OCGA § 43-34-20 (3); see *Penn. &c. Ins. Co. v. Gilliam*, 88 Ga. App. 451, 453 (76 SE2d 834) (1953), and registered nurses such as McAfee may administer medical treatments only as prescribed by a practicing physician. OCGA § 43-26-1 (3). However, I find no error in the admission of McAfee's testimony regarding the victim's medical history in view of McAfee's statement that she acted under the authority of Dr. Brad Ward at the time she examined the victim. See *Sparks v. State*, 172 Ga. App. 891, 892 (2) (324 SE2d 824) (1984).

McAfee next testified as to the victim's out-of-court statement to McAfee that appellant was the abuser of the victim. Although admission of such testimony was error because it was not reasonably related to the taking of medical history, *Roberson v. State*, 187 Ga. App. 485, 486 (370 SE2d 661) (1988), this error was harmless here because the testimony was cumulative of the victim's testimony, *Johnson v. State*, 149 Ga. App. 544, 545 (5) (254 SE2d 757) (1979), and also was admissible pursuant to OCGA § 24-3-16, which provides that "[a] statement made by a child under the age of 14 years describing any act of sexual contact or physical abuse performed with or on the child by another is admissible in evidence by the testimony of the person or persons to whom made if the child is available to testify in the proceedings and the court finds that the circumstances of the statement provide sufficient indicia of reliability." The victim in the instant case was available to testify at trial and did so testify. Although the record does not expressly show that the trial court found that "sufficient indicia of reliability" were present, the evidence adduced at trial did reveal that McAfee was trained to evaluate child molestation victims, and that she was a detached professional with no personal interest in the outcome of the case. There was no evidence the victim's statement was obtained under coercion or duress. Thus, the trial court was authorized to find that the victim's statement was made voluntarily to a trustworthy witness, and accordingly that the circumstances of the statement provided sufficient indicia of reliability. See *Newberry v. State*, 184 Ga. App. 356, 357-358 (2) (361 SE2d 499) (1987).

However, I find that reversible error was committed by admission of the nurse practitioner's opinion testimony that the victim had been sexually abused. The nurse practitioner, who examined the victim approximately four years after the alleged sexual abuse occurred, testified that upon examining the victim she observed scarring of the victim's hymenal membrane, and then stated, over proper objection, that in her opinion this finding was consistent with the history of sexual abuse related to her by the victim. McAfee further testified that in her opinion the scarring was caused by penetration of the vagina by a blunt object.

"The diagnosis and the causes and effects of diseases and other

kindred matters of medical practice form an important field of expert testimony. Except to the extent that the physical condition of a person is open to ordinary observation by persons of common experience, opinion evidence in this field is limited to the opinions of experts—that is, of physicians." 31 AmJur2d Expert & Opinion Evidence § 103 (1967); see *Cherokee County Hosp. Auth. v. Beaver*, 179 Ga. App. 200, 204 (345 SE2d 904) (1986). Nurses, who are not authorized by law to diagnose injuries or diseases or to prescribe treatments, are not qualified to testify as expert witnesses regarding "decisions and treatment that [are] exclusively within the professional skills of medical doctors." *Smith v. Hospital Auth.*, 161 Ga. App. 657, 660 (3) (288 SE2d 715) (1982). Interpretation of the cause and significance of vaginal scarring is such a matter and thus must be presented by expert medical opinion. *Pegg v. State*, 183 Ga. App. 668, 669 (359 SE2d 678) (1987); *Russell v. State*, 181 Ga. App. 624, 626 (3) (353 SE2d 820) (1987). Because no one other than a licensed medical doctor was qualified to state the opinion at issue here, and because McAfee, a nurse practitioner, is not a licensed medical doctor, the trial court erred by allowing her to testify. See *Fountain v. Cobb Gen. Hosp.*, 167 Ga. App. 36, 37 (306 SE2d 37) (1983); see generally *Moore v. State*, 221 Ga. 636 (5) (146 SE2d 895) (1966).

The medical malpractice cases cited by the majority on this issue, *Bethea v. Smith*, 176 Ga. App. 467 (336 SE2d 295) (1985), and *McCormick v. Avret*, 154 Ga. App. 178 (267 SE2d 759) (1980), aff'd sub nom., 246 Ga. 401 (271 SE2d 832), are inapposite. In *Bethea*, we found that, although pursuant to statutory authorization the podiatrist-witness was capable of rendering the same treatment as the defendant orthopedic surgeon for the condition at issue, there was no evidence the same standard of care for that condition was recognized by both schools of practice, and thus the podiatrist was not competent to present expert medical testimony against the orthopedic surgeon. In *McCormick*, this court authorized the testimony of a nurse on an issue *not* within the exclusive province of physicians. These cases do not authorize the admission of the opinion testimony at issue here.

Having concluded that the opinion testimony was improperly admitted, the remaining question is whether the error necessitates reversal of the conviction. "The test for determining whether error not of constitutional dimension is prejudicial is, of course, a familiar one. Regardless of whether there was other independently sufficient evidence to convict appellant, [the court] can find the error harmless only if it is 'highly probable that the error did not contribute to the judgment.' [Cits.]" *Parker v. State*, 162 Ga. App. 271, 275 (5) (290 SE2d 518) (1982). Because of the importance juries attach to medical testimony, I cannot find "that it was highly probable that the consid-

eration of the erroneously admitted [opinion testimony] of the state's [witness] did not influence the jury's verdict," *Estes v. State*, 165 Ga. App. 453, 456 (301 SE2d 504) (1983), and accordingly I would reverse.

I am authorized to state that Judge Carley and Judge Benham join in this special concurrence and dissent.

DECIDED NOVEMBER 30, 1988 —
REHEARING DENIED DECEMBER 20, 1988 —

*Ronald L. Davis*, for appellant.
*Darrell E. Wilson, District Attorney, William F. Riley, Jr., Assistant District Attorney*, for appellee.