A92A2128. TYE v. WILSON et al.
(430 SE2d 129)

POPE, Chief Judge.

On October 9, 1991, plaintiff/appellee J. T. Wilson, individually and as administrator of the estate of his wife, filed a complaint for medical malpractice against several defendants, including the hospital where plaintiff's decedent was treated, her treating physicians, and a registered nurse, appellant Kay Tye. Plaintiff's decedent died following surgery which was performed on May 2, 1989 at the defendant hospital for a hysterectomy and anterior repair. In the complaint, plaintiff alleges his wife began to bleed internally following her surgery causing her to suffer hypovolemic shock. Plaintiff contends the combination of his wife's suffering from hypovolemic shock and the delay of certain defendant doctors to ligate his wife's hypogastric arteries to stop the internal bleeding resulted in his wife's suffering acute renal failure and other organ damage. Plaintiff further alleges that because his wife was not continually sedated while she was recovering, on May 14, 1989, she accidentally dislodged an endotracheal tube, ultimately causing her death.

Tye filed a motion to dismiss on the ground that the affidavit filed with the complaint was insufficient to meet the requirements of OCGA § 9-11-9.1 (a), which provides: "In any action for damages alleging professional malpractice, the plaintiff shall be required to file with the complaint an affidavit *of an expert competent to testify,* which affidavit shall set forth specifically at least one negligent act or omission claimed to exist and the factual basis for each such claim." (Emphasis supplied.) The trial court denied Tye's motion to dismiss and we granted Tye's application for interlocutory appeal.

Plaintiff filed with his complaint the affidavit of Dr. Howard L. Cohn, a board certified member of the American College of Obstetrics & Gynecology. Tye argues that this affidavit is insufficient under OCGA § 9-11-9.1 (a) because plaintiff's expert, a doctor, is not com-

petent to testify that Tye, a nurse, was negligent.

We disagree. In his affidavit plaintiff's expert states: "Through education, training and experience, I am familiar with the standard of care acceptable to the *medical profession* generally. Particularly, I am familiar with such standards of care as same apply to the performing of a vaginal hysterectomy and anterior repair, the surgical management of the hemorrhaging patient, and the *care and treatment of an intubated patient*." (Emphasis supplied.) Later in the affidavit, he states Nurse Tye "failed to adequately restrain and closely monitor the patient with the endotracheal tube in place."

Nursing is a medical profession. Therefore the expert's statement that he is "familiar with the standard of care acceptable to the medical profession generally," is sufficient to encompass the nursing profession. This court has consistently held that members of the medical profession are competent to render an opinion about the standard of care of other members of the medical profession as long as their opinion concerns a common area of expertise.

This case is controlled by our decision in *0-1 Doctors Mem. Holding Co. v. Moore*, 190 Ga. App. 286 (378 SE2d 708) (1989). In *Moore*, this court held the affidavit of a medical doctor stating that it was his opinion plaintiff's injury was caused by the negligent application and control of a surgical tourniquet during plaintiff's operation and that this failure of reasonable care was attributable to the operating personnel, including a nurse, was sufficient to meet the requirements of OCGA § 9-11-9.1 as to all defendants, including the nurse.

*McCormick v. Avret*, 154 Ga. App. 178 (267 SE2d 759), aff'd, 246 Ga. 401 (271 SE2d 832) (1980) also offers controlling authority for holding the expert's affidavit in this case is sufficient to meet the requirements of OCGA § 9-11-9.1 with regard to Nurse Tye. *McCormick* was a medical malpractice case in which the only defendant was a medical doctor. In that case, this court held and our Supreme Court agreed it was error for the trial court not to qualify a nurse as an expert witness concerning what constitutes reasonable care in keeping sterilized a needle used to draw blood from a patient because there was no evidence that the drawing of blood is a medical treatment exclusively within the professional skills of medical doctors. *Avret v. McCormick*, 246 Ga. 401 (271 SE2d 832) (1980). Likewise in this case we cannot presume the treatment and monitoring of an intubated patient is a treatment exclusively within the professional skills of a nurse and that only a nurse would be competent to give an expert opinion or testimony in the area.

Defendant relies heavily upon our decision in *Piedmont Hospital v. Milton*, 189 Ga. App. 563 (377 SE2d 198) (1988). The *Milton* decision is readily distinguishable from this case. That case stands for the proposition that when a medical malpractice claim is made against a

nurse, an affidavit by a doctor is insufficient to meet the requirements of OCGA § 9-11-9.1 *if* it simply states the nurse did not follow the doctor's directions and does not discuss the applicable standard of care and set forth at least one negligent act by the nurse. In *Milton*, the plaintiff submitted the affidavit of the surgeon who had treated the plaintiff. In his affidavit, the surgeon simply stated that he had instructed the nursing staff that the plaintiff was to remain supine on the day the plaintiff fell while being assisted to the bathroom and he did not anticipate that plaintiff would have been assisted in walking given his instructions. Id. at 563-564. We held that affidavit was insufficient to show the affiant was "an expert competent to testify" because he did not state he was familiar with the standard of care the nursing staff should have utilized in caring for plaintiff and how they deviated from the requisite standard of care by not following the treating physician's post-operative instructions. Id. at 564. Clearly, this decision should not be read to hold that a plaintiff alleging malpractice against a nurse can *only* meet the requirements of OCGA § 9-11-9.1 by submitting the affidavit of a nurse, no matter what acts of negligence are alleged and even though plaintiff may have the affidavit of a doctor who is familiar with the standard of care for all medical personnel named as defendants in the case, including the nurse, and can state at least one negligent act or omission by the nurse.

The defendant's reliance on *Milligan v. Manno*, 197 Ga. App. 171 (397 SE2d 713) (1990) is also misplaced. In both *Milligan* and *HCA Health Svcs. v. Hampshire*, 206 Ga. App. 108 (424 SE2d 293) (1992), this court recognized that the differences between the educational curriculums and methods of treatment taught in different types of schools of medicine might make allopaths, osteopaths or medical doctors unqualified to give an expert opinion that a physician from a different school had deviated from the applicable standard of care, unless it was shown that the method of diagnosis or treatment in question was the same in the two schools of practice. As we recognized in *Hicks v. Mauldin*, 190 Ga. App. 660 (379 SE2d 806) (1989), however, an osteopath would be competent to testify as an expert in a medical malpractice action filed against an allopath if there was no difference in the way an osteopath and allopath would treat plaintiff's condition.

In this case, plaintiff's expert is a medical doctor and presumably has the education, training and experience normally possessed by a medical doctor. There is nothing to suggest that medical doctors and nurses are trained to treat intubated patients differently. Furthermore, there is nothing on the face of the affidavit to make it clear that plaintiff's expert would not be familiar with the applicable standard of care to be provided to plaintiff by Nurse Tye; therefore, we cannot disregard his averment that he is familiar. "The purpose of OCGA

§ 9-11-9.1 is to reduce the number of frivolous malpractice suits being filed, not to require a plaintiff to prove a prima facie case entitling him to recover and capable of withstanding a motion for summary judgment before the defendant need file his answer." *Moore*, 190 Ga. App. at 288. Because the requirements of OCGA § 9-11-9.1 and the purpose behind that statute are fulfilled by the plaintiff's affidavit, we affirm the trial court's denial of Nurse Tye's motion to dismiss.

*Judgment affirmed: McMurray, P. J., Birdsong, P. J., Carley, P. J., Beasley, Cooper and Andrews, JJ., concur. Blackburn, J., concurs specially. Johnson, J., dissents.*

BLACKBURN, Judge, concurring specially.

I concur fully with the analysis and result of the majority opinion in this case. I share Judge Johnson's concern for the history of cases decided pursuant to OCGA § 9-11-9.1 and the lack of certainty and increased litigation it has visited upon the courts and parties to malpractice litigation. I join Judge Johnson in encouraging the legislature to accept the failure of this attempt at limiting litigation and return us to an arena of reasonableness by repealing OCGA § 9-11-9.1.

JOHNSON, Judge, dissenting.

I respectfully dissent. I would find the affidavit in this case to be insufficient because it did not come from a member of the nursing profession.

Few issues have proved more vexatious to trial lawyers, trial judges, and the appellate courts of this state than the proper application of OCGA § 9-11-9.1. Intended to prevent frivolous litigation and all the costs inherent therein for both litigants and courts, this rule has instead caused more litigation. Rather than dealing at the summary judgment stage with the issues the legislature intended to solve, we have added a new layer of litigation at the motion to dismiss stage.

Since its enactment in 1987, there have been approximately 90 decisions from this court and the Supreme Court wrestling with this rule. Sadly, in the effort to bring some order and predictability to this area of the law, it appears that we have made matters worse. Perhaps it is time for the legislature to reconsider OCGA § 9-11-9.1, and to conclude that it was little more, in the end, than a noble effort which failed miserably to accomplish the goals for which it was enacted.

The instant case is a clear example of the difficulty the application of this rule has presented to all who are concerned with it. We are required to address once again the question of overlapping expertise. The claim of professional negligence is against a nurse and relates to nursing care; the affidavit is from a physician and relates to "the medical profession generally," not to nursing care, even though the physician asserts that he is familiar with the standard of care of

intubated patients. The effect of this statement would be to qualify him as an expert in every profession connected to medicine. In my view, his affidavit is insufficient to make him an expert on the standard of care in the nursing profession. Consistent with our previous decisions, this court could go either way on the sufficiency of the affidavit, and thus on the application of OCGA § 9-11-9.1 to the facts presented, and take either view in complete good faith. That is the problem. In our struggles to decide the matter "once and for all," we have done little more than assure, as best we can, that justice is done on a case-by-case basis. In the process, we have so muddied the waters as to what is acceptable and sufficient that we have put ourselves in the position of having to decide even more cases on that same flawed basis. We have thus robbed the trial courts and practitioners of any standard by which to gauge the matter save analogy, which, given our previous decisions, amounts to little if any guidance at all.

This case presents us with a perfect opportunity to provide meaningful guidance to the bench and bar of Georgia as well as to significantly reduce the amount of litigation over the rule. The Supreme Court, in *Gillis v. Goodgame*, 262 Ga. 117 (414 SE2d 197) (1992), established a bright-line standard for determining to whom the rule applies. That decision was long overdue, and accomplished in significant measure the goal of providing certainty and predictability to this area of the law for the benefit of practitioners and the trial courts. We should use the instant case to finish the job by establishing another bright-line standard. We should hold that an affidavit, to be deemed sufficient under OCGA § 9-11-9.1, must come from a member of the same profession as the defendant against whom the claim of professional negligence is made. While there is some validity to the notion that we should recognize the reality of overlapping expertise as we consider challenges to the sufficiency of affidavits filed pursuant to the rule, it seems that the time has come for us to recognize that we do more harm than good to the judicial system and to those who use it in these cases when we approach this issue in the way we have. It requires that we examine the question on a case-by-case basis after taking into account the peculiar facts of each case. There is little predictability and little guidance possible under the method of analysis we presently employ. The rule I propose provides clear guidance and absolute predictability while presenting no real hardship to the plaintiffs who must obtain the affidavit. If the claim is against a physician, it would be clear to the plaintiffs, the defendants, and the trial courts that the affidavit must come from a physician. If the claim is against a nurse, as in this case, the affidavit must come from a nurse, and so on down the line as to each profession to whom the rule applies now that *Gillis* has given us a clear standard.

DECIDED MARCH 16, 1993 —
RECONSIDERATION DENIED MARCH 30, 1993

*Smith, Gambrell & Russell, David A. Handley, Matthew S. Coles,* for appellant.
*Burnside, Wall & Daniel, Thomas R. Burnside, Jr., James B. Wall, Richard E. Allen,* for appellees.