A06A0849. RODRIGUEZ v. THE STATE.
(635 SE2d 402)

PHIPPS, Judge.

Robert Rodriguez appeals from his convictions of two counts of aggravated child molestation for placing his finger inside A. Y.'s vagina and anus and one count of child molestation for kissing the child's face. Rodriguez challenges the sufficiency of the evidence and admission of certain testimony. Because Rodriguez has demonstrated no merit in these challenges, we affirm.

1. "A person commits the offense of child molestation when he or she does any immoral or indecent act to or in the presence of or with any child under the age of 16 years with the intent to arouse or satisfy the sexual desires of either the child or the person."[1] "A person

---

commits the offense of aggravated child molestation when such person commits an offense of child molestation which act physically injures the child. . . ."[2]

> On appeal from a criminal conviction, we view the evidence in the light most favorable to the verdict, and the defendant no longer enjoys the presumption of innocence. We do not weigh the evidence or determine witness credibility, but only determine if the evidence was sufficient for a rational trier of fact to find the defendant guilty of the charged offense beyond a reasonable doubt.[3]

So viewed, the evidence showed that during the last six months of 2003, twenty-seven-year-old Rodriguez lived with A. Y.'s mother and her husband. Rodriguez was a former stepbrother of A. Y.'s mother.[4] A. Y., then four years old, lived with her maternal grandmother and visited her mother on weekends. One night in December 2003, A. Y.'s mother dressed A. Y. in pajama pants and shirt and then put her in her bed. The next morning A. Y. was not wearing her shirt, and when questioned by her mother, she stated that Rodriguez had taken it and her pants off her "in the night" and that she had put her pants back on. A. Y. told her mother, "Uncle Robert kissed me on the mouth and touched me here and here," motioning to her vaginal and anal areas. Alluding to Rodriguez, A. Y. said to her mother, "He loves me."

A. Y.'s parents immediately confronted Rodriguez, who was asleep on the sofa in the living room. He propped up his head, denied A. Y.'s allegations, and then rested his head back on a pillow. Beside the pillow under his head was A. Y.'s pillow, distinguished by a flowery pattern. The night before, when A. Y.'s stepfather went to bed around 4:30 a.m., only Rodriguez was awake in the house. At that time, A. Y.'s pillow was not on the sofa, and according to A. Y.'s mother, the child's pillows were always on her bed. After A. Y.'s parents confronted Rodriguez, they made him leave the residence.

A. Y.'s mother called for her own mother to come to the residence. When she arrived, A. Y. told her that Rodriguez had "stuck his finger in my —" and then pointed to her vaginal and anal areas. A. Y.'s maternal grandmother examined those areas and found them reddened and irritated. The family summoned police.

---

[2] OCGA § 16-6-4 (c).

[3] *Davis v. State*, 264 Ga. App. 128, 130 (1) (589 SE2d 700) (2003) (citations omitted); see *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

[4] A. Y.'s mother's mother had been married to Rodriguez's father.

Later that day, during a forensic interview by a social worker employed by a child advocacy center, A. Y. told the social worker that Uncle Robert had been in the bed with her "in the night"; that he had kissed her, pointing to cheeks on a drawing of a female child; that all of her clothes had come off; and that he had "[stuck] his finger in [her] butt," pointing to her vaginal and anal areas. A video recording of this interview was shown to the jury.

That same day, A. Y.'s vaginal and anal areas were examined by a licensed registered nurse. She observed a reddened vaginal area and small abrasions at the entry of the vaginal vault and at the anus. The nurse opined that these injuries had been caused by penetration or by some external force being thrust upon the areas. She further opined that A. Y.'s injuries were consistent with ones that might occur when an adult finger penetrates a child's vagina and anus. Photographs of A. Y.'s injured areas were shown to the jury.

The jury also heard evidence of similar transactions presented to show Rodriguez's motive, intent, and bent of mind. The transactions involved Rodriguez and his younger half-sister. She testified that when Rodriguez was about twelve years old and she was six or seven, he began kissing her on her mouth and touching her vagina with his finger and that he later advanced to placing his penis in her vagina.

Contrary to Rodriguez's contention, the evidence authorized a rational trier of fact to find him guilty beyond a reasonable doubt of the offenses for which he was convicted.[5]

2. Rodriguez contends that the trial court erred by allowing into evidence the nurse's opinion that A. Y.'s injuries were consistent with ones caused by penetration by a finger, arguing that the nurse was not qualified to give such opinion.

"[A] licensed registered nurse is qualified to testify as an expert witness within the areas of her expertise. . . . A witness with such skill, knowledge or experience in a field or calling as to be able to draw an inference that could not be drawn by the average layman may be qualified as an expert witness."[6]

Prior to giving the contested opinion, the nurse outlined her relevant background. She had earned a four-year degree in nursing from a university, which curriculum provided two years of courses such as anatomy and physiology and then included nursing classes. Later, she completed the Sexual Assault Nurse Examiner's program (SANE). That required her to complete a 40-hour didactic class

---

[5] See *Duvall v. State*, 273 Ga. App. 143 (1) (a) (614 SE2d 234) (2005); *Rudisail v. State*, 265 Ga. App. 293, 294-295 (2) (593 SE2d 747) (2004).

[6] *Hyde v. State*, 189 Ga. App. 727, 728 (1) (377 SE2d 187) (1988) (citations and punctuation omitted).

offered by SANE, which provided training from law enforcement officers and experienced SANE nurses. She further completed SANE's advanced pediatric training under the direction of a physician who had been involved in child abuse cases for over 30 years. Next, she completed the clinical aspect of the SANE, which included performing pelvic examinations with a physician, SANE nurse, or nurse practitioner and also performing three sexual assault investigations with experienced SANE nurses. As of the time of Rodriguez's trial, the nurse had performed 75 to 100 pelvic examinations, 25 to 30 of which had been on children under the age of six years.

Based upon the foregoing, the trial court did not abuse its discretion in determining that the nurse's qualifications were appropriate and adequate for her to render the contested opinion.[7]

*Judgment affirmed. Ruffin, C. J., and Smith, P. J., concur.*

DECIDED AUGUST 15, 2006.

*Leisa G. Terry*, for appellant.
*Kenneth B. Hodges III, District Attorney, Christopher S. Cohilas, Gregory W. Edwards, Assistant District Attorneys*, for appellee.