## A04A0429. MORRIS v. THE STATE.
(601 SE2d 804)

BARNES, Judge.

Following a jury trial, Adrian Morris was found guilty of aggravated sexual battery, child molestation, and aggravated child molestation. The child molestation and aggravated child molestation counts were merged for sentencing, and Morris was given a 20-year sentence for the sexual battery conviction with a concurrent 30-year sentence for the merged child molestation and aggravated child molestation convictions. Following the denial of his motion for new trial, Morris appeals, contending that the trial court erred in denying his motion in limine to exclude the testimony of two witnesses, in allowing an expert to testify about the victim's credibility, and in permitting a nurse to testify about psychological indicators of molestation. Upon review, we discern no error and affirm Morris's conviction.

1. In two enumerations of error, Morris complains that the trial court erred in denying his motion in limine to exclude the testimony of Cecilia Mason and Charlotte Writter. He contends that the State violated the reciprocal discovery provisions of OCGA § 17-16-1 et seq. because the witness list provided to him seventeen days before trial did not contain the name of either woman, and a list provided ten days before trial included only Mason's name, her mother's name, and a "Dr. Writter," with an erroneous address and phone number.

Under Georgia's Criminal Procedure Discovery Act, OCGA § 17-16-1 et seq., the prosecuting attorney is required to furnish the defense with names, current locations, dates of birth, and telephone numbers of the State's witnesses. OCGA § 17-16-8 (a). When the State fails to comply with the discovery statute,

> the court may order the state to permit the discovery or inspection, interview of the witness, grant a continuance, or, upon a showing of prejudice and bad faith, prohibit the state from introducing the evidence not disclosed or presenting the witness not disclosed, or may enter such other order as it deems just under the circumstances.

OCGA § 17-16-6. However, "[i]n enacting OCGA § 17-16-6, the legislature did not impose a rigid formulation or grant an exclusive remedy for a defendant or a fatal consequence to the State for failure

to comply with the discovery mandates. Instead, it cloaked the trial court with the discretion to use its own judgment to ensure a fair trial." (Punctuation and footnote omitted.) *Gay v. State*, 258 Ga. App. 634, 639 (3) (574 SE2d 861) (2002). We will not reverse the trial court's decision allowing the testimony of a State's witness whose information was not properly disclosed under the discovery statute unless it has abused that discretion. *Wilbanks v. State*, 251 Ga. App. 248, 255 (5) (a) (554 SE2d 248) (2001).

The record demonstrates that Morris's objection to Cecilia Mason was related to similar transaction testimony that Mason was going to present. The motion in limine requested that an alleged incident involving Mason be excluded. The morning of the first day of trial, Morris stated that he had been unable to locate Mason, and objected to Mason testifying pursuant to the Child Hearsay Statute, because the State failed to comply with the rules of discovery. The trial court overruled the objection, and said that Morris could interview Mason before trial and could also renew the discovery argument during trial. Mason testified the second day of trial, and before her testimony, Morris renewed his objection to Mason's testimony. The State argued that it had provided Morris with all of the information it had, including a phone number and a medical report from Egleston Hospital. The State maintained that it was able to contact Mason only the night before trial and repeatedly updated discovery when it received any new information. Morris denied that he received the information. The trial court reserved ruling until after the lunch recess, but instructed Morris to interview Mason, and for Morris and the State to attempt to agree on what had transpired. Another trial lawyer from defense counsel's firm talked to Mason during the lunch break, and Morris stated to the court that he and the State "agreed to try to resolve it in a different way." The trial court allowed Mason to testify regarding a similar transaction.

Morris also objected to the testimony of Charlotte Writter, a nurse who examined the victim. He maintained that he had not been given an accurate address for the witness and that Writter was identified as a doctor, while she was actually a nurse practitioner. The trial court allowed Morris to interview the witness prior to her testimony.

In these circumstances we find no abuse of discretion. In the absence of bad faith and prejudice, allowing a witness to be interviewed before trial "is the remedy for failure to comply with the requirement that a witness must be identified prior to trial." *Massey v. State*, 272 Ga. 50, 51-52 (4) (525 SE2d 694) (2000). Morris has not shown bad faith or prejudice here. It appears that Morris was aware of the witnesses' identities and the State's intention to call them as witnesses. "The witness list rule is designed to prevent a defendant

from being surprised at trial by a witness that the defendant has not had an opportunity to interview." (Citation and punctuation omitted.) *Rose v. State*, 275 Ga. 214, 217 (3) (563 SE2d 865) (2002). Morris had the opportunity to interview Mason. Moreover, while the information on both witnesses may not have been complete, the State never attempted to conceal the witnesses' names from Morris and updated Morris when more information was available. Morris knew the substance of both witnesses' testimonies from documents provided by the State, including the similar transaction notice.

Morris has also not shown how any late identification of these witnesses has prejudiced him, or that the outcome of the trial would have been different absent such. Additionally, Morris never requested a continuance to cure any prejudice which he claims may have arisen as a result of the State's failure to comply with OCGA § 17-16-8 (a). Accordingly, the trial court did not err in admitting both witnesses' testimonies. *McLarty v. State*, 238 Ga. App. 27, 29 (2) (516 SE2d 818) (1999).

2. Morris next argues that the trial court erred by permitting a witness to testify about the credibility of the victim, thereby allowing the witness to improperly bolster the victim's credibility. We do not agree with this characterization of the witness's testimony.

Dr. Nancy Aldridge, a psychotherapist, and the former clinical director for the Georgia Center for Children, interviewed the victim during the course of the investigation. During direct examination, while explaining the clinical techniques for interviewing children in cases of alleged sexual abuse, the State asked, "Was there anything in the demeanor of [the victim] that allowed you to rule out abuse in this case?" Morris objected, and the trial court overruled the objection. Aldridge replied, "No, sir. There was — there was nothing in her demeanor that would rule [it] out."

Generally, in no circumstances may a witness's credibility be bolstered by the opinion of another, even an expert, as to whether the witness is telling the truth. Testimony that another witness believes the victim impermissibly bolsters the credibility of the victim, which is a matter exclusively for determination by the jury. OCGA § 24-9-80; *Buice v. State*, 239 Ga. App. 52, 55 (2) (520 SE2d 258) (1999).

> What is forbidden is expert opinion testimony that directly addresses the credibility of the victim, i.e., "I believe the victim; I think the victim is telling the truth," or expert opinion testimony that implicitly goes to the ultimate issue to be decided by the jury, when such issue is not beyond the ken of the average juror, i.e., "In my opinion, the victim was sexually abused." Although the distinction may seem fine to a layman, there is a world of legal difference between expert

testimony that "in my opinion, the victim's psychological exam was consistent with sexual abuse," and expert testimony that "in my opinion, the victim was sexually abused." In the first situation, the expert leaves the ultimate issue/conclusion for the jury to decide; in the second, the weight of the expert is put behind a factual conclusion which invades the province of the jury by providing a direct answer to the ultimate issue: was the victim sexually abused?

(Citation and punctuation omitted.) *Brownlow v. State*, 248 Ga. App. 366, 368 (2) (a) (544 SE2d 472) (2001).

Here, the doctor was not asked to directly comment on the veracity of the victim. She did not testify that she believed the victim had been sexually abused. The testimony regarding the victim's demeanor did not express an impermissible opinion on an ultimate issue of whether the victim was sexually abused. See *Odom v. State*, 243 Ga. App. 227-230 (1) (a), (c) (531 SE2d 207) (2000) (witnesses may testify about behavior *consistent* with allegations of sexual abuse). Accordingly, the doctor's testimony did not constitute an impermissible statement of opinion regarding the victim's truthfulness, and the trial court did not err in overruling the objection.

3. Morris also contends that the trial court erred in permitting a nurse to testify that the victim displayed psychological evidence of molestation. We find no merit to this contention.

The pediatric nurse practitioner who examined the victim testified that she did not see any physical evidence of sexual abuse, but saw psychological evidence of sexual abuse. When Morris objected to her presenting psychological evidence of sexual abuse, the court directed the State to ask more foundation questions of the nurse. The State asked her about her qualifications and training in the examination of sexually abused children, and she was subsequently tendered as an expert in the field. Over Morris's objection, the trial court qualified her as an expert in the examination of children and particularly as to sexual and physical abuse. The nurse then testified about the victim's psychological state during her physical examination and said that the victim was "extremely fearful. Almost hysterical."

Contrary to Morris's contention, the nurse was not asked to present a psychological evaluation of the victim, but to assess her psychological state as it related to her physical exam of the child, an area within her expertise. A witness with such skill, knowledge, or experience in a field or calling as to be able to draw an inference that could not be drawn by the average layperson may be qualified as an expert witness. *Bishop v. State*, 271 Ga. 291, 292 (3) (519 SE2d 206)

(1999). Therefore, expert testimony is necessary because it supplies an interpretation of the facts which differs from the ordinary lay perception. Id.

A witness's qualification as an expert rests entirely in the sound discretion of the trial judge and will not be overturned unless the witness lacks appropriate credentials or the judge has applied the wrong criteria. *Hyde v. State*, 189 Ga. App. 727, 729 (1) (377 SE2d 187) (1988). The nurse received a master's degree in nursing, and her curriculum included child abuse training. She also attended a conference on child sexual abuse and worked with Safe Path, a child advocacy center. She taught a class to Cobb County officers about child abuse and testified that she had examined over 10,000 children, 15 of whom were sexually abused and over 100 of whom had suffered general abuse.

Based on this experience and training, the nurse was in a position to draw inferences that could not be drawn by the average layperson, and the trial court did not abuse its discretion in overruling Morris's objection and qualifying her as an expert.

*Judgment affirmed. Blackburn, P. J., and Mikell, J., concur.*

DECIDED JULY 2, 2004 — 

*Dupee & Pearson, Peter J. Pearson*, for appellant.
*Paul L. Howard, Jr., District Attorney, Christopher M. Quinn, Assistant District Attorney*, for appellee.

