## A06A0779. POSTELL v. THE STATE.
(630 SE2d 867)

BERNES, Judge.

A Houston County jury convicted Dexter Bernard Postell of possession of cocaine and giving a false name and date of birth. Postell contends that (1) the trial court erred in denying his motion to suppress; (2) the trial court erred in admitting the cocaine into evidence when the State purportedly failed to establish a proper chain of custody; and (3) the evidence was insufficient to support the verdict. For the following reasons, we affirm.

Viewed in the light most favorable to the verdict, the record reflects that shortly before 10:00 p.m. on November 2, 2002, a law enforcement officer with the Warner Robins Police Department was patrolling through an apartment complex located in an area of Houston County known for illegal drug activity. As he pulled into a parking lot of the complex, the officer noticed a female and two males walking across the lot in the direction of his patrol vehicle. The officer knew the female, but not the two males, one of whom was appellant. Consequently, the officer stopped his vehicle, approached the three individuals, asked them how they were doing, and inquired whether they would be willing to stop and speak with him. The three individuals agreed to speak with the officer, who then activated the video and audio equipment in his patrol vehicle.[1] During their ensuing conversation, the officer asked the two unknown males for identification. Appellant did not produce any form of identification to the officer. However, appellant identified himself as "Dexter Paul" with a birth date of June 5, 1972.

After receiving this information, the officer radioed his dispatcher to run a check for outstanding warrants. As the check for outstanding warrants proceeded, the officer asked appellant whether he would consent to a search of his person. Appellant consented to the search. During the search, the officer discovered personal documents in appellant's pants pocket that identified him as Dexter Postell with a birth date of July 5, 1971. The officer also discovered in appellant's back pants pocket five pieces of a substance that he suspected was crack cocaine. As a result, the officer placed appellant under arrest.

After arresting appellant, the officer conducted a field test of the substance found during the search. The substance tested positive for cocaine. The officer placed the cocaine in a plastic bag, sealed it, and secured it in a padlocked locker in the evidence room at the police department. From there, the sealed bag was sent to the Georgia

---

[1] The videotape from the patrol vehicle was introduced into evidence at trial without objection.

Bureau of Investigation ("GBI") crime lab in Macon for analysis. The GBI crime lab tested the substance in the bag and confirmed that it was cocaine.

1. Appellant contends that the trial court should have suppressed the cocaine found on his person that was introduced into evidence at trial. On appeal from a trial court's denial of a motion to suppress, "the evidence is construed most favorably to uphold the court's findings and judgment. If there is any evidence to support the trial court's findings on disputed facts and credibility, they will not be disturbed unless clearly erroneous." (Citation and punctuation omitted.) *Fitz v. State*, 275 Ga. App. 817 (1) (622 SE2d 46) (2005). "When reviewing a trial court's ruling on a motion to suppress, we may consider trial testimony in addition to the testimony submitted during the motion to suppress hearing." (Citation omitted.) *Peters v. State*, 242 Ga. App. 816, n. 1 (531 SE2d 386) (2000).

Here, appellant contends that the record reflects that the law enforcement officer's approach and questioning of him in the parking lot was a *Terry*[2] stop. He contends that the stop was unconstitutional because there was no articulable suspicion to support it. We disagree.

> Under our law, there are three levels of police-citizen encounters. In the first level, police officers may approach citizens, ask for identification, and freely question the citizen without any basis or belief that the citizen is involved in criminal activity, as long as the officers do not detain the citizen or create the impression that the citizen may not leave. This tier provides no Fourth Amendment protection. The second tier occurs when the officer actually conducts a brief investigative *Terry* stop of the citizen. In this level, a police officer, even in the absence of probable cause, may stop persons and detain them briefly, when the officer has a particularized and objective basis for suspecting the persons are involved in criminal activity. The third tier of police-citizen encounters includes full-scale arrests that must be supported by probable cause.

(Citation and footnote omitted.) *Childress v. State*, 251 Ga. App. 873, 875 (1) (554 SE2d 818) (2001).

There is nothing in the record indicating that when the officer stopped his vehicle and approached appellant and his companions, he engaged his siren and emergency equipment, drew his firearm, or made any other show of force. Nor is there any evidence that the

---

[2] *Terry v. Ohio*, 392 U. S. 1 (88 SC 1868, 20 LE2d 889) (1968).

officer threatened, coerced, or physically restrained appellant and his companions during the officer's approach and ensuing conversation with them. Rather, the officer *and appellant* testified that the officer approached appellant and his companions and asked how they were doing and whether they would stop and speak with him. The officer further testified that once the three individuals agreed to speak with him, the officer asked to examine their identification and shortly thereafter requested consent to search, which was given. Finally, the officer testified that during his encounter with appellant, he never did anything to imply that appellant was under arrest or not free to leave, until the point that cocaine was found on appellant's person as a result of the voluntary search.

In light of this record evidence, the trial court was entitled to find that the officer's initial approach and questioning of appellant was a level-one, noncoercive encounter. See *Buchanan v. State*, 259 Ga. App. 272, 272-274 (576 SE2d 556) (2003); *Palmer v. State*, 257 Ga. App. 650, 652 (1) (572 SE2d 27) (2002); *Childress*, 251 Ga. App. at 874-876 (1); *Gary v. State*, 244 Ga. App. 535, 536 (1) (536 SE2d 192) (2000); *State v. Kaylor*, 234 Ga. App. 495, 496-498 (507 SE2d 233) (1998); *State v. Willis*, 207 Ga. App. 76, 76-77 (427 SE2d 306) (1993). To the extent that appellant presented a different version of how the encounter played out, it was for the trial court, not this Court, to sit as the trier of fact, make credibility determinations, and resolve conflicts in the evidence. See *Dodgen v. State*, 247 Ga. App. 453, 454 (1) (543 SE2d 814) (2001).[3]

Because this was a level-one encounter, the officer did not need articulable suspicion to justify his conduct, and the officer was entitled to freely question appellant about his identity, ask to examine any identification he might have on his person, and request consent to search. See *Buchanan*, 259 Ga. App. at 274; *Willis*, 207 Ga. App. at 77. It follows that appellant's subsequent consent to the officer's search of his person was not tainted by an illegal stop and met constitutional muster. See *Gary*, 244 Ga. App. at 536 (1). Accordingly, the trial court did not err in denying appellant's motion to suppress.

---

[3] The videotape recording of the encounter reflects that at one point when the officer was speaking with appellant and his companions, the officer casually remarked that he had initially "stopped" them and asked for identification because the apartment complex was a known drug area and the officer did not recognize appellant or the other male. The fact that the officer, a nonlawyer, used the word "stop" to describe his initial encounter with appellant does not mandate a finding that the officer made a *Terry* stop. See *Fitz*, 275 Ga. App. at 819 (1), n. 2. Here, the officer specifically testified as to what he said and did as part of his initial approach and questioning of appellant and his companions, and at trial, appellant himself corroborated the officer's version of what was said. This testimony was sufficient to entitle the trial court to find that there had been no "stop" as that legal term is understood in *Terry* and its progeny.

2. Appellant next argues that the trial court erred by admitting the cocaine into evidence because the State allegedly failed to establish a proper chain of custody. We cannot agree.

> To show a chain of custody adequate to preserve the identity of fungible evidence, the State must prove with reasonable certainty that the evidence is the same as that seized and that there has been no tampering or substitution. The State is not required to foreclose every possibility of tampering; it need only show reasonable assurance of the identity of the evidence.

(Citation omitted.) *Hayes v. State*, 276 Ga. App. 268, 271 (4) (623 SE2d 144) (2005).

In the present case, the law enforcement officer who found the cocaine on appellant's person testified that he had sealed the cocaine in an identifiable plastic bag and placed it in a secured locker at the Warner Robins Police Department. The officer identified State's Exhibit 1 as the plastic bag in which he placed the cocaine. According to the officer, it was standard operating procedure for the evidence custodian at the police department to retrieve newly acquired evidence the following business day and send suspected narcotics to the GBI crime lab in Macon for testing.

A drug identification chemist from the GBI crime lab testified to the specific procedures followed by the lab to catalogue narcotics sent there for testing. The chemist testified that those procedures were followed in this case and that she retrieved the sealed plastic bag identified as State's Exhibit 1 from the lockbox at the crime lab, which was sealed, in good condition, and showed no signs of tampering. The chemist tested the substance in the bag, generated a written report with the test results, resealed the drugs in the plastic bag, and deposited the bag in the crime lab's drug vault until it was picked up by the police department. The testing conducted by the chemist revealed that the substance in the plastic bag identified as State's Exhibit 1 was cocaine.

This evidence was sufficient to establish the chain of custody for the cocaine at issue in this case. The cocaine was not rendered inadmissible merely because the State declined to call the police department's evidence custodian to testify about mailing the cocaine to the GBI crime lab. See *Palmer v. State*, 250 Ga. 219, 222 (3) (297 SE2d 22) (1982); *Hayes*, 276 Ga. App. at 271-272 (4). "The fact that one of the persons in control of a fungible substance does not testify at trial does not, without more, make the substance or testimony relating to it inadmissible." (Citation and punctuation omitted.) *Hayes*, 276 Ga. App. at 271 (4).

Moreover, the State was not required to present testimony from the GBI crime lab employee who physically retrieved the plastic bag from the mail and placed it in the crime lab's lockbox. "In the absence of affirmative proof of tampering, proof that the evidence was in the custody of the State Crime Lab established the chain of custody. The State need not establish a perfect chain of custody for evidence within the crime lab itself." (Citations and punctuation omitted.) *Maldonado v. State*, 268 Ga. App. 691, 693-694 (1) (603 SE2d 58) (2004). See also *Givens v. State*, 214 Ga. App. 774, 775 (2) (449 SE2d 149) (1994).

Finally, we have emphasized that

> where the testimony shows that the police placed the substance in a tamper-proof identifiable container and that the crime lab technician who tests the substance received it in the same container with no proof of tampering or substitution, the State has met its burden of showing with reasonable certainty that the substance tested was the same as that seized.

*Maldonado*, 268 Ga. App. at 694 (1). Under these circumstances, the trial court did not err in admitting the cocaine into evidence.

3. Lastly, appellant contends that there was insufficient evidence to convict him of the charged offenses. "When reviewing for sufficiency of the evidence, we view the evidence in the light most favorable to the verdict, and we neither assess the credibility of the witnesses nor reweigh the evidence." (Citation omitted.) *Alewine v. State*, 273 Ga. App. 629 (1) (616 SE2d 472) (2005). Construed in this light, and given that appellant's motion to suppress and objection on chain of custody grounds were properly denied, the evidence adduced at trial was sufficient to permit a rational jury to find appellant guilty beyond a reasonable doubt of possession of cocaine (OCGA § 16-13-30 (a)) and giving a false name and date of birth (OCGA § 16-10-25). *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

The State proved all elements of the charged offenses through the testimony of the arresting officer and GBI crime lab chemist, in conjunction with the videotape of the encounter that was admitted into evidence. The fact that appellant's testimony partially contradicted this evidence does not change the result. "Resolving evidentiary conflicts and inconsistencies, and assessing witness credibility, are the province of the factfinder, not this Court. As long as there is some evidence, even though contradicted, to support each necessary element of the state's case, this Court will uphold the jury's verdict." (Punctuation and footnote omitted.) *Anthony v. State*, 275 Ga. App. 274, 275 (1) (620 SE2d 491) (2005).

*Judgment affirmed. Andrews, P. J., and Barnes, J., concur.*

DECIDED MAY 9, 2006.

*Jeffrey L. Grube*, for appellant.
*Kelly R. Burke, District Attorney, George H. Hartwig III, Timothy M. Marlow, Assistant District Attorneys*, for appellee.