BERNES, Judge.
 

 A Toombs County jury convicted Calvin Lee Gassett of possession of cocaine with intent to distribute. On appeal, Gassett challenges the sufficiency of the evidence supporting his conviction. He also contends the trial court erred in denying his motion for continuance; in denying his chain of custody objection to the drug evidence; in admitting his pretrial statements to police and in admitting the prior statements of a witness. Lastly, he contends that his trial counsel rendered ineffective assistance. For the reasons that follow, we affirm.
 

 1. "On appeal, we view the evidence in the light most favorable to the verdict, and we no longer presume the defendant is innocent."
 

 **793
 

 (Citation omitted.)
 
 Beck v. State,
 

 286 Ga.App. 553
 
 (1),
 
 650 S.E.2d 728
 
 (2007). So viewed, the trial evidence shows that a Vidalia police officer received information that a relative, Victoria Mead Oliver, was in the midst of a two-day drug binge and that she had not been seen since she left with her children to obtain drugs. The next day, the officer learned that Oliver had taken her children to a daycare center and had then gone to a hotel room to continue her drug use. The officer, accompanied by other officers, went to the hotel room to check on Oliver's welfare and to inform her that she needed to contact the Department of Family and Children Services.
 

 When the officers arrived at the hotel room, Gassett opened the door and invited the officers inside. The room was in disarray; clothing was scattered everywhere and the bedding appeared to be disturbed. Tony Gillis and Kim Joyner, Oliver's cousin, were sitting on the couch. Joyner was only partially clad. Gassett told the officers that he was at the hotel room to have sex and that Oliver was in the bathroom. Shortly thereafter, Oliver emerged from the bathroom and left the hotel room with her relative.
 

 In the meantime, the other officers observed a partially smoked marijuana cigarette in an ashtray and consequently requested and obtained Gillis's consent to search the hotel room. During the search, the officers found drug paraphernalia in a nightstand drawer. In the couch, they also found crack
 
 *369
 
 pipes, several ziplock baggies commonly used in drug distribution, and a ziplock baggie containing cocaine. As a result, all four occupants of the room were detained for further investigation.
 

 After Oliver and Joyner were placed in the back seat of a patrol car, an officer observed them "moving and trying to stuff things in the seat." The officer immediately searched the back seat and found over 100 pieces of crack cocaine.
 

 Gassett, Gillis, Joyner and Oliver were all placed under arrest. Gassett gave a statement to the police in which he admitted going to the hotel room to have sex, but denied having any knowledge of the drugs discovered by the police. Oliver, who testified at trial, also gave a statement to the police.
 
 [1]
 
 According to Oliver, on the second day of her drug binge, she was joined by Joyner with whom she began looking for drugs. Oliver and Joyner went to the hotel room rented by Tony Gillis, where Joyner made telephone calls seeking someone who would provide them with drugs. Eventually, Joyner made contact with Gassett. Gassett brought a large amount of crack cocaine with him to the hotel room. After some of it was smoked, Gassett, Gillis,
 

 **794
 

 and Joyner packaged the rest into the small pink bags found at the scene. Joyner told Oliver that if she wanted more cocaine, she would have to perform sexual favors for Gassett. Oliver refused and, instead, locked herself in the bathroom and remained there for about 30 to 45 minutes until the police arrived.
 

 The above cited evidence was sufficient to sustain Gassett's conviction. See OCGA § 16-13-30(b);
 
 Spear v. State,
 

 228 Ga.App. 112
 
 , 112-113(1),
 
 491 S.E.2d 164
 
 (1997). Gassett argues that the jury's verdict was against the weight of the evidence and that the evidence was sufficiently close to warrant the grant of a new trial. But, "[t]his Court does not weigh the evidence or determine the credibility of witnesses." (Citations omitted.)
 
 Spear,
 

 228 Ga.App. at 113
 
 (1),
 
 491 S.E.2d 164
 
 . Since the evidence authorized a rational trier of fact to find Gassett guilty of the offense beyond a reasonable doubt, he is not entitled to a new trial.
 
 Id.
 

 2. Gassett next contends that the trial court erred in denying his motion for a continuance of trial made after his trial counsel learned that the state had subpoenaed Oliver to testify. Trial counsel argued that a continuance was warranted because Oliver had not been included on the witness list furnished by the state during discovery. "The decision whether to grant or deny a motion for continuance lies within the trial court's sound discretion and this Court will not interfere absent abuse of that discretion. OCGA § 17-8-22." (Citation and punctuation omitted.)
 
 Krirat v. State,
 

 286 Ga.App. 650
 
 , 657(3),
 
 649 S.E.2d 786
 
 (2007). We discern no abuse of the trial court's discretion in this case.
 

 "The witness list rule is designed to prevent a defendant from being surprised at trial by a witness that the defendant has not had an opportunity to interview." (Punctuation and footnote omitted.)
 
 Wilbanks v. State,
 

 251 Ga.App. 248
 
 , 255(5)(a),
 
 554 S.E.2d 248
 
 (2001). But, "[w]hen a witness' name is contained in the indictment, a defendant cannot validly contend that he had been surprised or unable to interview the witness in question through lack of knowledge of such witness." (Citation and punctuation omitted.)
 
 Byrd v. State,
 

 216 Ga.App. 510
 
 , 512(4),
 
 455 S.E.2d 318
 
 (1995). Because Oliver was named in the indictment as a co-defendant, Gassett had notice that she might be called as a state's witness.
 
 Id.
 

 Moreover, even though the court denied Gassett's motion for a trial continuance, his counsel was given an opportunity to interview Oliver and to prepare for her testimony in the approximately 1 ½ days which intervened between jury selection and the start of trial. When the trial court reconvened, Gassett did not renew his motion for continuance or request additional time to interview Oliver or prepare for her testimony. Gassett's trial counsel thoroughly cross-examined
 

 **795
 

 Oliver and impeached her with a prior drug conviction.
 

 *370
 
 And, significantly, at the motion for new trial hearing, Gassett's trial counsel admitted that he was not surprised that Oliver would testify at trial after entering her guilty plea. Gassett's trial counsel further acknowledged that he had interviewed Oliver on two separate occasions prior to her testimony at trial and had previously been provided Oliver's statement to police. Under these circumstances, the trial court did not abuse its discretion in denying the motion for a continuance. See
 
 Price v. State,
 

 223 Ga. App. 185
 
 , 186-187(3),
 
 477 S.E.2d 353
 
 (1996);
 
 Byrd,
 

 216 Ga.App. at 512
 
 (4),
 
 455 S.E.2d 318
 
 .
 

 3. Next, Gassett contends that the trial court erred in admitting the cocaine as physical evidence at trial. He claims that a proper chain of custody was not established to authorize admission of the physical evidence since the state failed to present testimony from all of the officers who had handled the evidence. We discern no error.
 

 To show a chain of custody adequate to preserve the identity of fungible evidence, the [s]tate must prove with reasonable certainty that the evidence is the same as that seized and that there has been no tampering or substitution. The [s]tate is not required to foreclose every possibility of tampering; it need only show reasonable assurance of the identity of the evidence.
 

 (Citation omitted.)
 
 Postell v. State,
 

 279 Ga. App. 275
 
 , 278(2),
 
 630 S.E.2d 867
 
 (2006);
 
 Hayes v. State,
 

 276 Ga.App. 268
 
 , 271(4),
 
 623 S.E.2d 144
 
 (2005). Here, the state met its burden through the testimony of the officers who collected the evidence, and the Georgia Bureau of Investigation (GBI) Crime Lab forensic chemist who tested the cocaine. The collecting officers testified that they sealed, stored, and maintained the evidence in secured lockboxes. The officers also testified to their use and maintenance of a written receipt to record and track custody of the evidence. In addition, the GBI Crime Lab forensic chemist testified that the sealed evidence packages were retrieved from the lab's lockbox and showed no signs of tampering. This evidence adequately established a proper chain of custody.
 
 Postell,
 

 279 Ga.App. at 278
 
 (2),
 
 630 S.E.2d 867
 
 ;
 
 Hayes,
 

 276 Ga.App. at 271
 
 (4),
 
 623 S.E.2d 144
 
 . Although the state failed to present testimony from the officer who transported the evidence to the Crime Lab, "[t]he fact that one of the persons in control of a fungible substance does not testify at trial does not, without more, make the substance or testimony relating to it inadmissible." (Citation and punctuation omitted.)
 
 Postell,
 

 279 Ga.App. at 278
 
 (2),
 
 630 S.E.2d 867
 
 ;
 
 Hayes,
 

 276 Ga.App. at 271
 
 (4),
 
 623 S.E.2d 144
 
 .
 

 **796
 

 4. Gassett further contends that the trial court erred in admitting his statement to police that he went to the hotel room to have sex with either Oliver or Joyner. Again, we find no error.
 

 Gassett's statement was relevant and admissible to support the state's theory that he was at the hotel room to exchange sex for drugs. Indeed, Gassett relied upon this statement himself to explain his purpose for being at the hotel room, although he denied knowing about the drugs. "Evidence that is relevant and material to an issue in a case is not rendered inadmissible merely because it incidentally places the defendant's character in issue." (Citation and punctuation omitted.)
 
 Evans v. State,
 

 288 Ga.App. 103
 
 , 108(3)(a),
 
 653 S.E.2d 520
 
 (2007).
 

 5. Gassett further contends the trial court erroneously admitted Oliver's pretrial statements to police in which she stated that she had observed Joyner have sex with Gassett in exchange for drugs and that Gassett had been cutting and packaging the drugs into small bags. We disagree. At trial, Oliver denied the facts set forth in these statements and further denied making these statements to the police. As such, her prior inconsistent statements were properly admitted over Gassett's hearsay objection to impeach Oliver and as substantive evidence of Gassett's guilt. See
 
 Ingram v. State,
 

 277 Ga. 46
 
 , 48(3),
 
 586 S.E.2d 221
 
 (2003);
 
 Leonard v. State,
 

 279 Ga.App. 192
 
 , 193(1),
 
 630 S.E.2d 804
 
 (2006);
 
 Shropshire v. State,
 

 226 Ga.App. 669
 
 , 670,
 
 487 S.E.2d 384
 
 (1997).
 

 Gassett nonetheless argues that Oliver's prior statements were inadmissible since they were made when Oliver was "in a severe state of intoxication" and as part of a purported plan between Oliver and Joyner to
 
 *371
 
 shift blame onto Gassett. Gassett did not urge these grounds of objection at trial. "[W]e cannot consider objections to evidence different from those raised at trial." (Citation and punctuation omitted.)
 
 Hunter v. State,
 

 282 Ga.App. 355
 
 , 357(3)(a),
 
 638 S.E.2d 804
 
 (2006). Thus, Gassett has waived these arguments on appeal.
 
 Id.
 
 See also
 
 Mundy v. State,
 

 259 Ga. 634
 
 , 635(5),
 
 385 S.E.2d 666
 
 (1989).
 

 6. Finally, Gassett claims that his trial counsel rendered ineffective assistance.
 

 To prevail on a claim of ineffective assistance of counsel, it must be shown both that counsel's performance was deficient and that but for this deficiency the outcome of the trial would have been different.
 
 Strickland v. Washington,
 

 466 U.S. 668
 
 ,
 
 104 S.Ct. 2052
 
 ,
 
 80 L.Ed.2d 674
 
 (1984). Failure to satisfy either prong of the
 
 Strickland
 
 standard is fatal to an ineffective assistance claim. In addition, a strong presumption exists that trial counsel performed within the wide range of reasonable professional assistance. The trial court's
 

 **797
 

 determination that [Gassett] was afforded effective assistance of counsel will not be reversed on appeal unless it was clearly erroneous.
 

 (Citation omitted.)
 
 Leonard,
 

 279 Ga.App. at 194
 
 (2),
 
 630 S.E.2d 804
 
 .
 

 (a) Gassett first contends that his counsel was ineffective in failing to object to Oliver's testimony that Joyner told her to grant Gassett sexual favors in exchange for drugs. He contends that the testimony was inadmissible hearsay which prejudiced him because it implied that he "was involved in and seeking to exchange drugs for sex with Ms. Oliver." As an initial matter, the complained of testimony was admissible as part of the res gestae of the crime.
 
 Ford v. State,
 

 274 Ga.App. 695
 
 , 700(3),
 
 617 S.E.2d 262
 
 (2005). As such, trial counsel's failure to object did not constitute deficient performance.
 
 Hayles v. State,
 

 287 Ga.App. 601
 
 , 605(3)(b),
 
 651 S.E.2d 860
 
 (2007) ("Counsel could not have been ineffective for failing to make a meritless objection."). Moreover, Oliver specifically disavowed Gassett's involvement in Joyner's proposition. She testified that Gassett told her "to disregard what [Joyner] was saying, that [she] didn't have to do anything." Consequently, Gassett's claim of prejudice is also without merit.
 

 (b) Gassett next claims that his trial counsel rendered ineffective assistance by failing to file a motion to suppress Oliver's statement to police on the alleged grounds that it was involuntary, unreliable, and made while she was under the influence of crack cocaine. "[W]hen trial counsel's failure to file a motion to suppress is the basis for a claim of ineffective assistance, the defendant must make a strong showing that the damaging evidence would have been suppressed had counsel made the motion." (Citations and punctuation omitted.)
 
 Davis v. State,
 

 267 Ga.App. 245
 
 , 246(2),
 
 599 S.E.2d 237
 
 (2004). Gassett has failed to make the requisite showing in this case.
 

 Gassett's argument that Oliver was in a "state of extreme intoxication" at the time she gave her statement to police is not supported by the record. There was no evidence, scientific or otherwise, as to the specific physical effects of crack cocaine based upon the amount Oliver consumed or how long the effects would have lasted. More importantly, there was no evidence that Oliver was in a state of intoxication when she subsequently gave the statement to the police. The mere fact that Oliver was an admitted crack cocaine addict who had used the drug on the day in question did not render her testimony inadmissible on the grounds that it was unreliable. Rather, this evidence presented an issue as to her credibility for jury determination. See
 
 Moore v. State,
 

 219 Ga.App. 818
 
 , 819,
 
 467 S.E.2d 5
 
 (1996).
 

 **798
 

 At the motion for new trial hearing, trial counsel testified that although he did not file a pretrial motion to suppress Oliver's testimony, he attempted to discredit her through cross-examination and in closing argument. Consequently, Gassett has not established that a motion to suppress Oliver's testimony would have been successful on the merits and presents no basis for finding that his counsel was ineffective. See
 
 Davis,
 

 267 Ga.App. at 246
 
 (2),
 
 599 S.E.2d 237
 
 .
 

 Furthermore, to the extent that Oliver's statement to police was cumulative of
 
 *372
 
 other trial evidence that Gassett had brought the drugs to the hotel room and the co-defendants were to exchange sex for drugs, there is no likelihood that the outcome of trial would have been different had trial counsel filed the motion to suppress Oliver's pretrial statement. See
 
 Opio v. State,
 

 283 Ga.App. 894
 
 , 897(1)(a),
 
 642 S.E.2d 906
 
 (2007);
 
 Glidewell v. State,
 

 279 Ga.App. 114
 
 , 124(7)(e),
 
 630 S.E.2d 621
 
 (2006).
 

 (c) Gassett also claims that his trial counsel was ineffective by failing to call co-defendant Joyner as a witness at trial. Joyner testified at the motion for new trial hearing, claiming ownership of all the crack cocaine found in the hotel room and in the patrol car. Joyner further testified that although she had not received the drugs from Gassett, she and Oliver had planned to blame Gassett so that they could avoid convictions.
 

 Despite Joyner's favorable testimony at the motion for new trial hearing, trial counsel explained that he had discussed whether to call Joyner as a trial witness with Gassett, and they agreed not to do so as a matter of trial strategy. Trial counsel further explained that if Joyner had been called as a witness, she could have been impeached by her prior statements to police that were consistent with Oliver's statements, which reflected negatively upon Gassett. When trial counsel interviewed Oliver prior to trial, she denied the existence of any plan to falsely place blame upon Gassett as alleged by Joyner. Thus, trial counsel elected to rely upon his strategy of discrediting Oliver, the only trial witness who testified about the events occurring at the hotel room prior to the officers' arrival.
 

 "It is well established that the decision as to which defense witnesses to call is a matter of trial strategy and tactics; tactical errors in that regard will not constitute ineffective assistance of counsel unless those errors are unreasonable ones no competent attorney would have made under similar circumstances.&#
 

 **799
 

 34; (Citations and punctuation omitted.)
 
 Dickens v. State,
 

 280 Ga. 320
 
 , 321(2),
 
 627 S.E.2d 587
 
 (2006). Gassett has failed to show that his trial counsel's strategy was unreasonable under the circumstances of this case.
 

 Judgment affirmed.
 

 BLACKBURN, P.J., and RUFFIN, J., concur.
 

 At the time of trial, Oliver, who was jointly indicted with Gassett and Gillis, had pled guilty, but had not been sentenced.