### A09A1055. PEARCE v. THE STATE.
(686 SE2d 392)

BERNES, Judge.

Following a jury trial, James Pearce was convicted of aggravated sexual battery, incest, child molestation, and statutory rape. On appeal from the trial court's denial of his motion for new trial, Pearce contends that the trial court erred (1) in denying his motion for a directed verdict as to the aggravated sexual battery charge; (2) in

---

failing to excuse a prospective juror for cause; (3) in failing to declare a mistrial sua sponte when a state's witness and the prosecutor made allegedly improper comments before the jury; (4) in sustaining an objection to defense cross-examination on a ground other than that propounded by the state; (5) in admitting carpet and DNA evidence when the state failed to establish a proper chain of custody; and (6) in admitting certain testimony from a nurse practitioner. He further contends that his trial counsel rendered ineffective assistance. We discern no error and affirm.

Viewed in the light most favorable to the jury's verdict,[1] the evidence at trial showed that Pearce is the uncle of B. F. When B. F. was seven years of age, her mother passed away and she went to live with Pearce and his wife. B. F. testified that over the course of the five-year period that she lived at the residence, Pearce sexually abused her. The acts of sexual abuse that B. F. recounted at trial, included multiple acts of sexual intercourse, oral sex, and at least one occasion in which Pearce had penetrated his finger into her vagina. Pearce told B. F. that the sexual abuse was their "secret" and instructed her not to tell anyone.

During the summer of 2005, when B. F. was thirteen years old, she disclosed the sexual abuse to her two best friends. B. F.'s friends told their mothers about the disclosure, and the matter was reported to the Department of Family and Children Services ("DFACS").

DFACS and police investigations ensued. During initial interviews conducted in the course of these respective investigations, B. F. recanted her prior sexual abuse allegations. B. F. later testified at trial that she was afraid to disclose the incidents during the investigations because she was still living with the Pearces and feared being punished by them.

Several days after her initial interviews, however, B. F. called the DFACS caseworker again and reasserted her claims regarding the sexual abuse. The caseworker contacted a detective with the Gwinnett County Police Department's Special Victims Unit to conduct another investigation into the allegations. During subsequent interviews with the detective, B. F. disclosed the molestation incidents. B. F. was taken into DFACS custody and was removed from the Pearce residence.

B. F. received a medical examination by a nurse practitioner who specialized in child molestation and sexual assault examinations. While providing her medical history for the examination, B. F. again disclosed the sexual abuse. The nurse practitioner testified that she observed narrowing in B. F.'s vaginal hymen during the examination

---

[1] *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

that was consistent with penetration and B. F.'s allegations.

During the investigation, B. F. identified the locations in the residence where the molestations occurred and related that Pearce had ejaculated on the carpet in the basement during one of the incidents. The detective obtained warrants authorizing the search and seizure of evidence in Pearce's residence and the procurement of Pearce's DNA sample. A piece of the soiled carpet from the basement of the residence, along with Pearce's DNA sample, were collected and sent to the Georgia Bureau of Investigation (GBI) Crime Laboratory for testing. The test revealed that the carpet contained seminal fluid, the DNA of which matched Pearce's.

Based upon the foregoing evidence, Pearce was convicted of the multiple sexual offenses.

1. On appeal, Pearce challenges the sufficiency of the evidence to sustain his aggravated sexual battery conviction. He contends that the trial court erred in denying his motion for a directed verdict on this charge. We disagree.

> The standard of review for the denial of a motion for directed verdict of acquittal is the same as that for reviewing the sufficiency of the evidence to support a conviction. Under that standard we view the evidence in the light most favorable to the jury's verdict and determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Conflicts in the testimony of the witnesses, including the [s]tate's witnesses, are a matter of credibility for the jury to resolve.

(Footnote omitted.) *Hutchinson v. State*, 287 Ga. App. 415 (651 SE2d 523) (2007). "A person commits the offense of aggravated sexual battery when he or she intentionally penetrates with a foreign object the sexual organ or anus of another person without the consent of that person." OCGA § 16-6-22.2 (b). A "foreign object" can include a finger. See *Hutchinson*, 287 Ga. App. at 417.

The trial evidence in this case included the testimony of the nurse practitioner, who stated that B. F. had disclosed in her medical examination that Pearce had "put his fingers in her private part" during one of the sexual encounters.[2] This evidence established the offense. See OCGA § 16-6-22.2 (b). While it is true that B. F. had recanted her allegations during the initial investigations and testified at trial that she could not recall whether Pearce had penetrated her with his finger, such inconsistencies and conflicting evidence

---

[2] See OCGA § 24-3-16 (the child hearsay statute); *Williams v. State*, 293 Ga. App. 617, 618-619 (3) (668 SE2d 21) (2008).

only created a question of credibility for the jury's resolution.[3] See *Colton v. State*, 297 Ga. App. 795, 796-797 (1) (678 SE2d 521) (2009); *Harvey v. State*, 295 Ga. App. 458, 460 (671 SE2d 924) (2009); *Hutchinson*, 287 Ga. App. at 417-418. Because there was some evidence establishing Pearce's commission of the aggravated sexual battery offense, the trial court's denial of the motion for directed verdict was proper.

2. Pearce further contends that the trial court erred in failing to excuse prospective juror no. 12 for cause.[4] During voir dire examination, the prospective juror stated that he had been a victim of child molestation. When asked whether he "could set aside that experience and be fair and impartial listening to evidence in this case," the prospective juror responded, "I think I probably could." And upon further examination, the prospective juror confirmed that if selected to serve on the jury, he would be able to apply the law as the trial judge instructed and be fair to both parties. The prospective juror did not indicate that he had any feelings of bias against Pearce personally.

Pearce nevertheless argues that the prospective juror's bias was demonstrated by evidence that he told a fellow prospective juror that he wished that the case involved anything but child molestation. In denying Pearce's motion to strike for cause, the trial court reasoned that the alleged comment did not establish a bias or a fixed belief in the guilt or innocence of the accused, but rather reflected a common opinion of jurors in this type of case involving a difficult and unpleasant subject. In light of the prospective juror's responses that he could be fair and impartial, the trial court concluded that removal for cause was not required.

> Whether to strike a juror for cause lies within the sound discretion of the trial court. Unless the juror holds an opinion regarding the guilt or innocence of the defendant that is so fixed and definite that the juror will be unable to set the opinion aside and decide the case based on the

---

[3] In defending against Pearce's motion at trial, the prosecutor stated that B. F. also had disclosed the facts of the aggravated sexual battery during her videotaped interview with the detective. The videotaped interview was played for the jury at trial, but no transcript of the recording was included in the appellate record.

[4] At the motion for new trial hearing, the trial court stated that Pearce's failure to exhaust his peremptory strikes may have rendered the alleged error harmless. However, the defendant's use of his peremptory strikes no longer plays a role in the evaluation of the harm caused by the refusal to strike an unqualified juror. See *Wallace v. State*, 275 Ga. 879, 881 (3) (572 SE2d 579) (2002); *Bass v. State*, 183 Ga. App. 349, 352 (358 SE2d 837) (1987). Compare *McClain v. State*, 267 Ga. 378, 381 (1) (b) (477 SE2d 814) (1996); *Pope v. State*, 256 Ga. 195, 202 (7) (e) (345 SE2d 831) (1986), overruled on other grounds by *Nash v. State*, 271 Ga. 281 (519 SE2d 893) (1999).

evidence and court instructions, a court need not excuse the juror for cause.

(Punctuation and footnotes omitted.) *Brown v. State*, 243 Ga. App. 632, 632-633 (1) (534 SE2d 98) (2000). Because the prospective juror had stated that he could set aside his prior experience and determine the issues fairly and impartially based upon the evidence and the court's instructions, the trial court did not abuse its discretion in refusing to strike him for cause. "A juror who expresses a willingness to try to be objective and whose bias arises from feelings about the particular crime as opposed to feelings about the accused may be eligible for service." (Punctuation and footnotes omitted.) Id. at 633 (1). See also *Roberts v. State*, 258 Ga. App. 107, 109 (3) (572 SE2d 744) (2002) (a prospective juror who had been a victim of child molestation was not disqualified from service in the case involving child molestation); *Green v. State*, 249 Ga. App. 546, 552-553 (3) (547 SE2d 569) (2001); *Gibbins v. State*, 229 Ga. App. 896, 898-899 (3) (495 SE2d 46) (1997).

3. Next, Pearce argues that the trial court erred in failing to declare a mistrial, sua sponte, based upon allegedly improper comments made by a state's witness and the prosecutor. He contends that the comments tainted the jury and deprived him of a fair trial.

(a) Pearce first complains that the DFACS case manager improperly commented that she believed "[t]hat there was more to the story" than what the victim revealed during her initial interview. Upon hearing the comment, the trial court immediately interrupted the questioning and called both counsel to the bench for a conference to address the matter. During the bench conference, trial counsel requested that a curative instruction be given to the jury to disregard the comment. The trial court gave the jury a curative instruction, as requested. No further relief was sought.

"Because [Pearce] failed to ask for a mistrial . . . , the trial court did not err in failing to give one sua sponte." *Morrison v. State*, 276 Ga. 829, 834 (4) (583 SE2d 873) (2003). See also *Phagan v. State*, 243 Ga. App. 568, 568-569 (1) (533 SE2d 757) (2000). The trial court's curative instruction provided a sufficient remedy and a mistrial was not mandated in this case. See *Head v. State*, 253 Ga. App. 757 (1) (560 SE2d 536) (2002); *Stewart v. State*, 239 Ga. App. 543 (1) (521 SE2d 468) (1999).

(b) Pearce further complains that the prosecutor made an improper comment that one of its chain of custody witnesses was unavailable because she was in Iraq. The prosecutor's comment was made during a colloquy with the trial court in the jury's presence, while intending to address Pearce's chain of custody objection to the introduction of the carpet evidence. The trial court sustained trial

counsel's objection to the comment and admonished the prosecutor during a bench conference. Trial counsel did not ask for a mistrial or a curative instruction. "After an objection to an improper question or argument is sustained, there is no reversible error absent a request from the complaining party for further corrective action." *Pye v. State*, 269 Ga. 779, 788 (18) (505 SE2d 4) (1998). See also *Morrison*, 276 Ga. at 834 (4); *Woodham v. State*, 263 Ga. 580 (1) (a) (439 SE2d 471) (1993) (after sustaining an objection to the prejudicial matter, "the court has no duty to rebuke counsel or give curative instructions unless specifically requested by the defendant").

4. Pearce further contends that the trial court erred in sustaining an evidentiary objection interposed at trial on a ground other than that proposed by the state. During cross-examination, Pearce's counsel asked the DFACS caseworker, "If [B. F.], for example, said that there was another caseworker with you [at the interview], who's right?" The state objected to the question, asserting that it called for speculation. The trial court ruled that the objection was sustained for a different reason, but did not articulate the reason in its ruling.

To the extent that Pearce's claim challenges the trial court's ruling as a procedural matter, he expressly abandoned it at the motion for new trial hearing and, therefore, it has not been preserved for appellate review. See *Vincent v. State*, 276 Ga. App. 415, 417 (3) (623 SE2d 255) (2005). And, to the extent that Pearce's argument challenges the substantive basis for the trial court's ruling, no reversible error has been shown. At the motion for new trial hearing, Pearce argued that the question at issue was pertinent to impeach the state's witnesses. "[W]hile a witness may be impeached on a collateral issue which is indirectly material to the issue in the case, a witness may not be impeached because of a discrepancy as to a wholly immaterial matter." (Citations and punctuation omitted.) *Gilbert v. State*, 159 Ga. App. 326, 327 (2) (283 SE2d 361) (1981). Because the impeachment question was wholly immaterial to the issue of Pearce's guilt of the crimes charged, no ground for reversal has been presented. See id. at 327-328 (2). See also OCGA § 24-9-85 (a); *Brown v. State*, 260 Ga. 153, 156 (4) (391 SE2d 108) (1990).

5. Pearce also claims that the trial court erred in admitting the state's carpet evidence. He alleges that the state failed to establish a proper chain of custody in the absence of testimony from one of the investigators who helped obtain the evidence. His claim is without merit.

> Where the [s]tate seeks to introduce evidence of a fungible nature, it must show a chain of custody adequate to preserve the identity of the evidence. The burden is on the

[s]tate to show with reasonable certainty that the evidence is the same as that seized and that there has been no tampering or substitution. The [s]tate need not negate every possibility of tampering, and need only establish reasonable assurance of the identity of the evidence. When there is only a bare speculation of tampering, it is proper to admit the evidence and let what doubt remains go to the weight.

(Citation omitted.) *Kuykendall v. State*, 299 Ga. App. 360, 362-363 (683 SE2d 56) (2009).

Even if we were to conclude for argument sake only that the carpet was a fungible object,[5] the state met its burden through the testimony of the lead detective who oversaw the collection of the evidence; the evidence technicians at police headquarters who received, stored, and transported the evidence; and the forensic biologist who performed testing on the evidence at the GBI Crime Lab. The detective and evidence technicians testified that the evidence was sealed, stored, and maintained in secured lockboxes. The evidence technicians further testified to their maintenance of written property sheets and forms to record and track custody of the evidence. And lastly, the GBI Crime Lab forensic biologist testified that the sealed evidence was stored and retrieved from the lab's secured lockbox in accordance with their standard procedures before testing. Significantly, the witnesses testified that the evidence showed no signs of tampering. A proper chain of custody therefore was established. See *Gassett v. State*, 289 Ga. App. 792, 795 (3) (658 SE2d 366) (2008).

This conclusion is not altered by the state's failure to present testimony from the investigator who assisted the detective in obtaining the evidence. "[T]he fact that one of the persons in control of a fungible substance does not testify at trial does not, without more, make the substance or testimony relating to it inadmissible." (Citations and punctuation omitted.) *Gassett*, 289 Ga. App. at 795 (3); *Thomas v. State*, 288 Ga. App. 602, 606 (2) (654 SE2d 682) (2007). The carpet evidence was properly admitted.

6. Pearce claims that the nurse practitioner's testimony regarding the "cycle of abuse" was improperly admitted because she was not qualified as an expert in psychology.[6] He further argues that the

---

[5] But see *Kuykendall*, 299 Ga. App. at 363, ruling that there was no requirement to establish chain of custody for DNA and semen evidence found on a sheet since the sheet was a "non-fungible physical object easily identifiable by observation" and the DNA evidence was readily identified and unique to the defendant.

[6] Pearce does not challenge the nurse practitioner's qualifications to testify as an expert

nurse practitioner's testimony expressed an impermissible opinion on the ultimate issue of whether B. F. was a victim of sexual abuse. Again, we discern no error.

A licensed registered nurse may be qualified to testify as an expert witness as to matters within the scope of her expertise. See *Hyde v. State*, 189 Ga. App. 727, 728 (1) (377 SE2d 187) (1988). "A witness's qualification as an expert rests entirely in the sound discretion of the trial judge and will not be overturned unless the witness lacks appropriate credentials or the judge has applied the wrong criteria." *Morris v. State*, 268 Ga. App. 325, 329 (3) (601 SE2d 804) (2004). See also *Hyde*, 189 Ga. App. at 729 (1). The trial court did not abuse its discretion in this case.

Here, the nurse practitioner was asked to explain the elements of the "cycle of abuse," also commonly referred to as the "child sexual abuse syndrome." See *McCoy v. State*, 278 Ga. App. 492, 493-494 (3) (629 SE2d 493) (2006).[7] After allowing Pearce's counsel to voir dire the nurse practitioner as to her qualifications, the trial court ruled that she was qualified to testify about the syndrome, but instructed that she would not be allowed to testify as to the ultimate issue of whether B. F. had been sexually abused.

The nurse practitioner's qualifications included her certification as a sexual assault nurse examiner, specialized training on the performance of sexual assault examinations and forensic medical examinations, training on child sexual abuse at the Scottish Rite Advocacy Center, and continuing education training on child sexual abuse at various conferences. She had performed child molestation and sexual assault examinations for the Gwinnett Sexual Assault and Child Advocacy Center, had trained other nurses and law enforcement officers throughout Georgia on the topic of child sexual assault for a period of over 12 years, and had testified as an expert in the field of sexual assault examinations on over 50 occasions during her career. The nurse practitioner further testified that she had performed thousands of sexual assault examinations, during which she routinely obtained the child victim's medical history, including information and disclosures of the alleged sexual abuse. In light of the nurse practitioner's training and experience, the trial court was authorized to find that she was qualified in the field of sexual assault examinations and that the child sexual abuse accommodation syn-

---

regarding the physical examination.

[7] Georgia courts have long allowed testimony regarding child sexual abuse syndrome and its common characteristics, including secrecy, helplessness, accommodation, delayed disclosure, and recantation. See *Allison v. State*, 256 Ga. 851, 852 (2) (353 SE2d 805) (1987); *McCoy*, 278 Ga. App. at 493-494 (3); *Rolader v. State*, 202 Ga. App. 134, 141-142 (2) (413 SE2d 752) (1991).

drome was an area within the scope of her expertise. See *Hicks v. State*, 196 Ga. App. 311, 313 (2) (396 SE2d 60) (1990) (pediatrician with expertise in child abuse was allowed to testify regarding a child's reticence to report sexual abuse); *Braggs v. State*, 189 Ga. App. 275, 276 (2) (375 SE2d 464) (1988), disapproved on other grounds at *Morgan v. State*, 267 Ga. 203 (476 SE2d 747) (1996) (pediatrician with knowledge and experience in examining sexually abused children was qualified to testify regarding the child sexual abuse syndrome); *Kelly v. State*, 197 Ga. App. 811, 814-815 (4) (399 SE2d 568) (1990) (DFACS worker with child molestation training was qualified to testify as an expert on the child abuse accommodation syndrome); *Keri v. State*, 179 Ga. App. 664, 665-667 (1) (347 SE2d 236) (1986) (registered nurse, who was also a psychologist and had a master's degree in social work, was qualified to testify regarding the child abuse accommodation syndrome). See generally *Morris*, 268 Ga. App. at 328-329 (3).

After being qualified as an expert, the nurse practitioner generally explained the child sexual abuse accommodation syndrome by stating that children who are sexually abused may exhibit certain behavioral characteristics, including secrecy, helplessness, fear, and confusion, which may cause them to delay disclosure of the abuse and recant their previous disclosures. She only testified generally about the characteristics of the syndrome, and offered no opinion as to whether B. F. suffered from the syndrome. The nurse practitioner further testified that her physical findings during B. F.'s examination, including that B. F.'s hymen had "narrowing," "retracted," and "scalloped edges," were consistent with the sexual assault allegations. Her testimony did not directly address B. F.'s credibility or express a direct opinion that B. F. had been sexually abused. As such, the testimony did not improperly bolster the credibility of the victim or address the ultimate issue before the jury. The testimony was properly admitted. See *Braggs*, 189 Ga. App. at 276 (2); *Kelly*, 197 Ga. App. at 814-815 (4); *Keri*, 179 Ga. App. at 665-667 (1). See also *Mullis v. State*, 292 Ga. App. 218, 220 (3) (b) (664 SE2d 271) (2008); *Odom v. State*, 243 Ga. App. 227, 227-228 (1), 229 (1) (b) (531 SE2d 207) (2000).

7. Lastly, Pearce contends that his trial counsel rendered ineffective assistance by (a) failing to move for a mistrial when the state's witness and prosecutor made allegedly improper comments as set forth in Division 3 above and (b) failing to "question [B. F.] deeper" about the appearance of Pearce's genital area.

To establish ineffectiveness of trial counsel under *Strickland v. Washington*, 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984), defendant must show both that counsel's

performance was deficient and that the deficient performance prejudiced the defense. Unless a defendant makes both showings, it cannot be said that the conviction resulted from a breakdown in the adversary process that renders the result unreliable. There is a strong presumption that trial counsel's performance falls within the wide range of reasonable professional assistance and that any challenged action might be considered sound trial strategy. In the absence of testimony to the contrary, counsel's actions are presumed strategic. The trial court's determination that an accused has not been denied effective assistance of counsel will be affirmed on appeal unless that determination is clearly erroneous.

(Citation and punctuation omitted.) *McRae v. State*, 289 Ga. App. 418, 419 (657 SE2d 323) (2008). Pearce has not met the requisite standard in this case, and therefore, his ineffective assistance claim must fail.

(a) Pearce has failed to show that his trial counsel was ineffective for failing to move for a mistrial based upon the improper comments addressed in Division 3 above. The decision to move for a mistrial may be a matter of trial strategy. See *Rowe v. State*, 244 Ga. App. 654, 656 (3) (538 SE2d 452) (2000). Pearce failed to call his trial counsel as a witness at the motion for new trial hearing. "As a result, [Pearce] made no affirmative showing that the purported deficiencies in his trial counsel's representation were indicative of ineffectiveness and were not examples of a conscious and deliberate trial strategy." (Citation and punctuation omitted.) *McRae*, 289 Ga. App. at 419-420. See also *Cayruth v. State*, 273 Ga. App. 166, 167 (3) (614 SE2d 809) (2005). Trial strategies do not equate to ineffective assistance merely because appellate counsel would have pursued a different strategy. See *Johnson v. State*, 282 Ga. 235, 236 (2) (647 SE2d 48) (2007); *Anderson v. State*, 274 Ga. 871, 874 (4) (560 SE2d 659) (2002). No evidence has been presented to indicate that the failure to move for a mistrial was an unreasonable strategy in this case.

And as stated in Division 3 above, the trial court sufficiently remedied the improper comments by giving a curative instruction, sustaining trial counsel's objection, and admonishing the prosecutor. A mistrial was not required. Because Pearce has not shown that a motion for mistrial would have been meritorious under the circumstances of this case or that the remedial actions taken were insufficient, his claim fails. See *Johnson v. State*, 281 Ga. 770, 772 (2) (b) (642 SE2d 827) (2007) (trial counsel's failure to move for a mistrial did not amount to ineffective assistance when the defendant failed to

show that there was a reasonable probability that the outcome of the trial would have been different).

(b) Likewise, there is no merit to Pearce's claim that his trial counsel failed to effectively cross-examine B. F. regarding the appearance of his genital area. Trial counsel did in fact elicit testimony challenging B. F.'s credibility as to this matter during B. F.'s cross-examination.[8] Pearce's argument that B. F. should have been questioned "deeper" on the issue affords no basis for relief. "The scope of cross-examination is grounded in trial tactics and strategy, and will rarely constitute ineffective assistance of counsel." (Citation and punctuation omitted.) *Daniels v. State*, 296 Ga. App. 795, 802 (5) (g) (676 SE2d 13) (2009).

While it is true that trial counsel did not specifically ask B. F. whether Pearce was uncircumsized, Pearce has not shown that the failure prejudiced his defense. Significantly, Pearce failed to present any evidence that B. F. would not have been able to identify the alleged distinction if a more specific question had been posed. Absent a proffer of the necessary evidence to show that B. F. would have been impeached on the issue, his ineffective assistance claim fails. See *Spear v. State*, 271 Ga. App. 845, 847 (2) (610 SE2d 642) (2005); *Goodwin v. Cruz-Padillo*, 265 Ga. 614, 615 (458 SE2d 623) (1995) (absent a proffer as to the expected testimony of the witnesses, it is impossible for the court to review the details affecting the determination of whether there was a reasonable probability that the outcome would have been different had the testimony been elicited).

*Judgment affirmed. Smith, P. J., and Phipps, J., concur.*

DECIDED NOVEMBER 5, 2009.

*Macklyn A. Smith*, for appellant.
*Daniel J. Porter, District Attorney*, for appellee.

---

[8] In response to trial counsel's cross-examination on the issue, B. F. only described gray hairs and a scar on Pearce's stomach. In support of the defense, trial counsel called Pearce's wife as a witness. She stated that Pearce's penis had a distinctive appearance in that it was uncircumsized.